Robert Allen MUNROE, Appellant,

v.

Donald LASCH, d/b/a Arthur Peters Inc., and Gerald P. Ptacek, District Attorney, Racine County, Wisconsin, his Assistants, Employees, Agents and Successors, Respondents.

No. 86–C–1389.

United States District Court, E.D. Wisconsin.

May 26, 1987.

910

John P. Kafkas, Milwaukee, Wis., for appellant.

Carl R. Edenhofer, Jr., Joling Edenhofer Van Cura Associates, Kenosha, Wis., Joan M. Korb, Asst. Corp. Counsel, Racine, Wis., for respondents.

## DECISION AND ORDER

CURRAN, District Judge.

On October 17, 1986, debtor Robert Allen Munroe filed an adversary proceeding in the United States Bankruptcy court seeking to have defendants, Gerald Ptacek and Donald Lasch, d/b/a Arthur Peters Inc., held in contempt of the bankruptcy court's discharge order. The debtor also sought to enjoin and dismiss all further proceedings in a criminal action which had been brought against him in the Circuit Court of Racine County. After a hearing on October 29, 1986, the bankruptcy court denied Munroe's motion and dismissed the action with prejudice. The judgment was docketed on December 16, 1986, and the plaintiff then filed a timely notice of appeal on December 24, 1986. *See* Bankruptcy Rule 8002(a).

■ Because the adversary proceeding sought injunctive relief on behalf of the debtor, the court treated it as a core proceeding within the meaning of 28 U.S.C. § 157(b)(1). *See In re HBG Servicenter, Inc.*, 45 B.R. 668, 671 (Bankr.E.D.N.Y. 1985). Therefore, the judgment is a final judgment subject to appeal to the district court pursuant to 28 U.S.C. § 158(a).

In their pretrial report to the bankruptcy court, the parties stipulated to the following facts:

1. That on October 3, 1985, the plaintiff, with the assistance of Attorney John P. Kafkas, filed a petition for personal bankruptcy (File No. 85–03739) with the Clerk of the Bankruptcy Court for the Eastern District of Wisconsin and said matter was assigned to the Honorable Charles N. Clevert, one of the judges presiding in said Court.

2. That Schedule A–3 of said petition listed an indebtedness of $10,000 to the defendant-creditor, Donald Lasch, d/b/a Arthur Peters Leasing, Inc.

3. That on or about October 10, 1985, the Court entered an Order, *inter alia* staying all proceedings against the plaintiff-debtor pursuant to 11 U.S.C. § 362(a); that said Order provided that if by January 6, 1985 no objection is made to the discharge of the plaintiff-debtor, or if by that date no complaint is filed to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(a), the plaintiff-debtor would be granted his discharge.

4. That the defendant-creditor herein received a copy of said Notice and Order from the Bankruptcy Court and was bound by the same.

5. That the defendant-creditor filed no claim relating to the plaintiff's debt with the Bankruptcy Court, nor did the defendant-creditor personally, or by counsel, appear at any meetings scheduled by the said Court, including the first meeting of creditors held on November 7, 1985, or the discharge and reaffirmation hearing held on January 16, 1986.

6. That the defendant-creditor, having been afforded an opportunity by virtue of 11 U.S.C. § 362(b)(1) to move the Bankruptcy Court to be relieved from the injunctive effect of the automatic stay provisions of 11 U.S.C. § 362(a), failed to assert that right.

7. Further, that the defendant-creditor failed at every opportunity to assert his right to commence an adversary proceeding in the Bankruptcy Court to chal-

lenge the Bankruptcy Court's jurisdiction in the matter, or to oppose the dischargeability of the plaintiff-debtor's obligation to the defendant-creditor.

8. The defendant-creditor did not petition the Bankruptcy Court for an Order vacating the Order of Discharge of the plaintiff-debtor's obligation to the defendant-creditor.

9. It is agreed that the United States Bankruptcy Court had exclusive and unchallenged jurisdiction over the debts and obligations of the plaintiff-debtor and that at no time prior to the filing or the pendency of the petition for bankruptcy was any criminal action pending or commenced by the defendant-creditor or the defendant, Gerald P. Ptacek, District Attorney for Racine County. Further, that defendant-creditor made no threats to plaintiff-debtor that such an action would be commenced.

10. That the subject check which forms the basis of the debt and of the criminal charges herein was issued to the defendant-creditor on December 19, 1984. The defendant-creditor did not contact the Racine Police Department until June of 1986.

11. As a result of a criminal complaint issued by the defendant Racine County District Attorney's Office, the plaintiff-debtor, Robert Allen Munroe, was placed under arrest.

12. That the plaintiff-debtor has employed an attorney to defend him against the criminal action.

13. That on September 4, 1986 during a pre-trial conference before Racine County Court Commissioner William A. DeMark, the defendant Racine County District Attorney, by an assistant district attorney, stated to the plaintiff-debtor's attorney, John P. Kafkas, that if the plaintiff-debtor, Robert Allen Munroe, made restitution to the defendant-creditor by the plea (trial) date, she would recommend to the Court that the plaintiff-debtor be placed on probation, with the first thirty (30) days in the Racine County Jail; that if the plaintiff-debtor failed to make restitution, she would be free to recommend imprisonment at will.

14. That on September 17, 1986 counsel for the plaintiff-debtor served the defendant, Gerald P. Ptacek, District Attorney for Racine County, by one of his assistant district attorneys, and filed with the Honorable Emmanuel J. Vuvunas, Circuit Court Judge for Racine County, Wisconsin certified copies of the following documents:

Order for Meeting of Creditors and Fixing Times for Filing Objections to Discharge and For Filing Complaints to Determine Dischargeability of Certain Debts, Combined with Notice Thereof and of Automatic Stay.

Discharge of Debtor entered by the Bankruptcy Court on February 5, 1986.

15. That in addition thereto, the attorney for the plaintiff-debtor moved the court on the record that in view of the bankruptcy proceedings, the criminal action be dismissed; that the defendant, Gerald P. Ptacek, by his assistant district attorney prosecuting the action, refused to dismiss said prosecution, but agreed that the jury trial might be adjourned to October 22, 1986; that the trial court denied the motion to dismiss, but agreed to the adjournment upon payment of $750 jury costs.

16. That the plaintiff-debtor has been ordered to stand trial ... for alleged violation of Wisconsin Statutes § 943.-24(2), a felony providing for a fine not to exceed $10,000 or imprisonment not to exceed two years or both.

Pre-Trial Report at 1–5.

Before the bankruptcy court and now on appeal, Munroe contends that the respondent-creditor's sole motive in initiating the criminal prosecution against him was to force him to pay an obligation which had been discharged in bankruptcy. He maintains that the respondent-prosecutor has combined with the creditor in this objective by threatening imprisonment for up to two years if restitution is not made to the respondent-creditor. Consequently, the appellant asks that an order be entered finding Lasch in contempt and ordering him to pay legal fees and costs in this bankruptcy matter and in the Racine County criminal

prosecution. Munroe also asks the court to enter an order permanently enjoining the further prosecution of the criminal case by either Lasch or Ptacek.

Lasch, the respondent-creditor, says that he has not taken any action to collect a debt from Munroe by means of a criminal action. He says that he merely contacted the Racine Police Department at the request of the purchaser of his business. He says that he would prefer to take a business loss for the bad check. During the hearing in the bankruptcy court, Lasch's counsel elaborated:

MR. EDENHOFF: Your Honor, Mr. Lasch has no intention and never really had intention to receive any monetary sum from this matter. In fact, Mr. Lasch was in the process of selling his business when Mr. Munroe's file or accounts receivable came to his attention, because he is selling his Leasing Company to a Bank. The Bank, when reviewing the accounts receivable, determined to use this primarily for tax losses because—

COURT: That's something I'm familiar with here.

MR. EDENHOFF: That's right. There is a large number of various tax advantages to the Bank for purchasing a Leasing Company. The $10,000.00 had been considered by Mr. Lasch as a loss, which would have been accounted for at the end of this year, and he had advised the Bank that this would be a loss because there had been a bankruptcy and he believed a discharge in bankruptcy would be inevitable.

The Bank advised him though that may be so, but why don't you, in light of the fact that he never received his money and the title to the car had been transferred to another individual and Mr. Lasch, or actually Arthur Peterson, Inc. never received any funds from that whatsoever from that sale, that check was never honored, why don't you contact a policeman by the name of Detective Shelby, or Officer Shelby, which he did.

He told him what occurred, provided him with documents, and that's the last he ever heard of the matter.

The primary purpose for us being here today, I am representing Mr. Lasch because I understand in a telephone conversation with the District Attorney's Office two weeks ago, in fact there was some contempt proceeding initiated against Mr. Lasch. I have yet to receive any of the documents in this regard. I am here—in case there is testimony given, I am here to protect Mr. Lasch's interest.

COURT: You are representing the Corporation as well?

MR. EDENHOFF: I feel, however, those actions do not in any way constitute any action that would be contemptuous to the Court, or any order of the Court in existence.

Secondly, the District Attorney's Office, Corporate Counsel, I take no position on the temporary injunction in this matter, but for the fact I would like to stress that Mr. Lasch had no intention of receiving any cash or any money out of this. By this point, he had determined it was going to be a tax write-off, going to take a loss on this deal.

In light of that fact, I fail to see that one can argue that restitution, or there would be some means by which Mr. Lasch—in fact, I object to any type of representation that Mr. Lasch, the Bank which is to purchase this corporation, or the corporation is using the District Attorney's Office as some means by which to get the money. They don't need the money. They can take the tax loss and be equally as valuable to them.

Transcript of Proceedings: Hearing on Motion for Injunctive Relief at 9–11.

Ptacek, the respondent-prosecutor, asserts that the criminal prosecution was not commenced to collect a debt, but rather to punish Munroe for violating the laws of the State of Wisconsin. The District Attorney maintains that: "The prosecution was punitive in nature, not an action to collect a debt." The Assistant District Attorney recommended restitution as well as jail time as a punitive sanction. *See* Brief of De-

fendant-Respondent Gerald P. Ptacek, District Attorney for Racine County, His Assistants, Employees, Agents and Successors at 5.

At the conclusion of the bankruptcy court hearing, Judge Clevert concluded that:

... I do not see anything to suggest that this prosecution is nothing more than a ruse.

This is not a case, at least based upon the record here, where the complaint and the, actually where the subject of the check, and I am not sure whether it was Mr. Lasch or Arthur Peterson, Inc.,—I should perhaps strike "subject" and say "payee" was the actual complainant in the criminal case.

You will note that most of the bankruptcy cases where injunctions were sought involved payees sought criminal prosecution and were, indeed, the complainants. Here, that is not the case. The uncontroverted testimony of Mr. Lasch is that he spoke with a police officer, and the next he knew, he was receiving a subpoena, so he was not the complainant.

If the District Attorneys follow the procedure I am familiar with, a party goes into the D.A.'s Office and tells his or her story, the D.A. then has a complaint prepared, the party telling the story then swears before the District Attorney to the truth of the allegations in the complaint and signs it. So, on that basis, that the complaint is issued—so, on that basis the arrest warrant is issued, and the case then goes into court for a preliminary hearing after the subject is arrested.

So, here we do not have a typical case where an individual or business, which received a check, has complained for the purpose of collecting money, or had become a complainant in a criminal case. We have a witness, Mr. Lasch, but we do not have him as a complainant on the complaint.

Secondly, and perhaps more importantly, you are utilizing discussions, pretrial discussions, which I always have some problems with, as a basis for assertion that an injunction should be imposed. While I have some difficulty in accepting pretrial discussions as a basis for deciding any kind of case, because discussions are not binding on anyone, I, nonetheless, note that the discussions that took place here, and the discussions that you are relying upon did not have restitution as the sole objective of prosecutor. The prosecutor was seeking incarceration as a portion of any disposition that might be agreed to by your client. Thus, it can't be concluded that collection of a debt was the sole motivation for the criminal charges brought against Mr. Munroe.

Transcript of Proceedings: Hearing on Motion for Injunctive Relief at 25–27. Relying on *United States v. Alexander,* 743 F.2d 472, 473 (7th Cir.1984), the court concluded that "criminal prosecutions are not to be stayed merely because a Debtor has gone through bankruptcy and there was a discharge of a debt which might also be the subject of a criminal prosecution." *Id.* at 28. The court also invoked the *Younger* doctrine under which federal courts are not to interfere with state prosecutions, except under certain limited circumstances not present in this case. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Accordingly, the court denied the motion for preliminary injunctive relief and dismissed the adversary action with prejudice.

On appeal Munroe continues to argue that a creditor who has received notice of a bankruptcy may not take steps to collect a debt by use of the criminal process without first seeking relief from the court's discharge order. *See In re Van Riper,* 25 B.R. 972 (Bkrtcy.W.D.Wis.1982). Defendant Ptacek counters by pointing out that the Supreme Court has recently ruled that restitution obligations in state criminal proceedings are not dischargeable in bankruptcy proceedings. *See Kelly v. Robinson,* — U.S. —, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). And the Seventh Circuit has held that a discharge in bankruptcy does not bar a trial court from ordering restitution for a subsequent conviction involving debts cov-

ered by the discharge. *See United States v. Alexander*, 743 F.2d 472, 480 (7th Cir. 1984). Other bankruptcy courts in this state have also recognized that good faith criminal proceedings ought to be protected as a matter of comity. *See In re Jerzak*, 47 B.R. 771, 773 (Bkrtcy.W.D.Wis.1985); *In re Van Riper*, 25 B.R. at 977.

■■■ Once a debtor files a petition for bankruptcy relief, most acts to collect prepetition debts are automatically stayed. *See* 11 U.S.C. § 362. However, the commencement or continuation of criminal proceedings against a debtor is *not* subject to the *automatic* stay provisions of the Bankruptcy Code. *See* 11 U.S.C. § 362(b)(1). Nevertheless, such proceedings may be judicially enjoined under 11 U.S.C. § 105.

■■■ The defendants point out that this circuit and others have ruled that a trial court is not prohibited from imposing restitution as a condition of probation when a subsequent conviction involves debts covered by a bankruptcy discharge. *See Alexander*, 743 F.2d at 480. *See also Barnette v. Evans*, 673 F.2d 1250 (11th Cir.1982); *United States v. Carson*, 669 F.2d 216 (5th Cir.1982). It is also now settled that a restitution order is not subject to discharge. *See Kelly*, 107 S.Ct. at 360–61. However, in determining whether a criminal action should be enjoined or whether those initiating the criminal action should be held in contempt, the focus should be on the inception of the criminal action not on the ultimate sentencing. Munroe invites the court to use the "principal motivation" test in making this determination. This test was followed in the initial phase of *In re Taylor*, 16 B.R. 323 (Bkrtcy.D.Md.1981), *rev'd*, 44 B.R. 548 (Bkrtcy.D.Md.1984), where the court stated that the purpose behind the criminal action determines whether a state criminal proceeding should be enjoined:

The important inquiry is therefore a determination of what circumstances warrant an injunction under § 105 restraining a criminal prosecution against a Debtor. The nature of the moving force behind the institution of the criminal proceeding is the determinative factor.

Prosecutions instituted primarily to vindicate the public welfare by punishing criminal conduct of the Debtor and to discourage similar conduct of others are not usually interferred with by Bankruptcy Courts. When it is clear that the principal motivation is neither punishment nor a sense of public duty, but rather to obtain payment of a dischargeable debt either by an order of restitution or by compromise of the criminal charge upon payment of the civil obligation, the Bankruptcy Court may properly enjoin the criminal proceeding.

*Id.* at 325–26.

Now a trend appears to be emerging whereby courts are all but abandoning the "principal motivation" test. They are relying instead on the *Younger* abstention doctrine to narrow the circumstances under which a federal court may enjoin a state criminal prosecution. In dissolving an injunction previously entered in *In re Taylor*, the bankruptcy court explained that:

The proper circumstances in which a federal court may enjoin a state criminal prosecution are severely circumscribed by *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), in which the Supreme Court noted that the principles of "Our Federalism" and comity are major considerations in deciding whether courts of equity should interfere with criminal prosecutions. *Id.* at 44, 91 S.Ct. at 750. A statutory exception to the Anti-Injunction Act such as section 105(a), does not qualify the principles which limit a federal court when it is asked to enjoin a state court proceeding. *Davis v. Sheldon, supra* [, 691 F.2d 176] at 178 [ (3d Cir.1982) ]; *Mitchum v. Foster*, 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972). Except "in extraordinary circumstances," which do appear to be present in the within case, state criminal proceedings may be enjoined only when there is a showing of "bad faith" or "harassment" or the like. *Younger*, 401 U.S. at 53, 91 S.Ct. at 754.

*In re Taylor*, 44 B.R. 548, 549 (Bkrtcy.D. Md.1984). *See* also *In re Little Giant Mobile Homes, Inc.*, 60 B.R. 194, 195 (Bkrtcy.

W.D.La.1986) ("the principal motivation test is a dead issue in the Fifth Circuit"); *In re First Texas Petroleum Inc.*, 52 B.R. 322, 326–28 (Bkrtcy.N.D.Tex.1985).

The Supreme Court in *Younger* recognized that federal law has always:

[S]tressed the importance of showing irreparable injury, the traditional prerequisite to obtaining an injunction. In addition, however, the Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient, unless it is "both great and immediate." Certain types of injury, in particular, the cost, anxiety, and inconveniences of having to defend against a single criminal prosecution could not by themselves be considered "irreparable" in the special legal sense of the term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

*Younger*, 401 U.S. at 46, 91 S.Ct. at 751 (citations omitted). Applying these considerations in the context of a bankruptcy case, courts have reasoned that the "bad faith" standard should apply and the court should grant an injunction only if it would not cause "immediate irreparable harm" that is, unless the injunction is necessary to preserve a federally protected right. *See In re First Texas Petroleum, Inc.*, 52 B.R. at 328.

A Wisconsin bankruptcy court confronted with a request to enjoin a criminal proceeding used a "bad faith" analysis, explaining that: "A criminal proceeding is not brought in good faith when the complaining witness had insufficient evidence to support the allegations, when the prosecuting authority has reason to doubt the validity of the charges or when the prosecuting authority fails to exercise independent judgment in continuing the prosecution." *In re Jerzak*, 47 B.R. at 773. *See also Barnette*, 673 F.2d at 1252; *In re Lare*, 24 B.R. 959, 962 (Bkrtcy.D.Md.1982).

■ No evidence has been presented in the case at bar which would indicate that the criminal case was commenced for the purpose of harassment or that it was undertaken in bad faith without hope of obtaining a valid conviction. There is nothing in the record to indicate that the charge against Munroe is flimsy or that the Racine District Attorney has no hope of obtaining a valid conviction.

Munroe has been charged with violating section 943.24(2) of the Wisconsin Statutes, which provides:

Whoever issues any single check or other order for the payment of $500 or more or whoever within a 15–day period issues more than one check or other order amounting in the aggregate to $500 or more which, at the time of issuance, the person intends shall not be paid is guilty of a Class E felony.

Wis.Stat. § 943.24(2) (1985–1986). The record in this case establishes that Munroe tendered a check for over $500 to Lasch and that the check was returned for insufficient funds. Thus, there has been a showing of each essential element except intent.

The penalty provision of section 943.24 states that:

(b) In addition to the other penalties provided for violation of this section, a judge may order a violator to pay restitution to a victim regardless of whether the violator is placed on probation under s. 973.09. In determining the method of payment, the court shall consider the financial resources and future ability of the violator to pay. The court shall provide for payment of an amount equal to the pecuniary loss caused by the offense. Upon the application of any interested party, the court shall schedule and hold an evidentiary hearing to determine the value of the victim's pecuniary loss resulting from the offense. A victim may not be compensated under this section and s. 943.245.

Wis.Stat. § 943.24(5)(b) (1985–1986). Under this statute restitution is a penalty available to the sentencing court, but it is not mandatory. The Seventh Circuit has characterized restitution as a sentence primarily aimed at rehabilitating a defendant,

not at recompensing a victim. *See Alexander*, 743 F.2d at 480. Although the criminal prosecution of Munroe has not yet reached the penalty phase, the record indicates that the possibility of restitution has been suggested by the Racine County Assistant District Attorney during plea bargaining. Nevertheless, the bankruptcy court properly accorded little weight to what was said in these nonbinding pretrial negotiations. The District Attorney has asserted that the prosecution will go forward whether or not restitution is made.

■ Munroe has made no showing that he will suffer irreparable harm to a federally protected right if the criminal case is not enjoined. Simply being forced to defend oneself in a criminal action has never constituted the irreparable and immediate harm contemplated by *Younger*. *See In re Little Giant Mobile Homes, Inc.*, 60 B.R. at 196. Besides being unable to show that the complaint was meritless or that it was the result of the defendants' efforts to harass, Munroe has not claimed that he would be precluded from asserting any rights as legal defenses in the state court proceeding. *See In re First Texas Petroleum, Inc.*, 52 B.R. at 328. As *Younger* indicated, "a basic doctrine of equity jurisprudence is that Courts of equity should not act ... when the moving party has an adequate remedy at law." *Younger*, 401 U.S. at 42, 91 S.Ct. at 749.

The record reveals that Lasch had only one contact with the Racine Police Department and that he was not the complaining witness. *Cf. In re Van Riper*, 25 B.R. at 973 (creditor had numerous contacts with the district attorney to urge the prosecution of the debtor). When the bankruptcy court asked District Attorney Ptacek's counsel whether prosecution had been undertaken to collect a debt for Lasch, counsel responded:

I believe that Mrs. Weber [the prosecutor], if Mrs. Weber were to testify, the evidence would be, Your Honor, that while there was discussion of restitution, it falls far short of the type of situation where the District Attorney has offered to cease the criminal prosecution upon payment of restitution. In fact, the District Attorney's Office is adamant that the prosecution should go forward whether or not restitution is ever made. Pursuant to their policies, they are prepared to give the defendant some credit at sentencing if he does in fact make restitution. However, they are still recommending jail time upon conviction, should he be convicted, whether or not restitution is made.

Transcript of Proceedings: Hearing on Motion for Injunctive Relief at 8. Thus, even when motivation is considered, it is uncontroverted that debt collection was not the principal motivation in charging Munroe.

Having reviewed the record and the applicable law, the court concludes that the Racine County criminal case against Munroe was not commenced in "bad faith" or in contempt of a court order. Moreover, Munroe has not demonstrated that he will suffer any immediate or irreparable harm in the sense contemplated by *Younger*. Even using a less stringent standard, the appellant has not persuaded the court that the defendants acted with the "principal motivation" of collecting a debt which had been discharged. Therefore, the court concludes that the bankruptcy court's ruling was not legally erroneous nor did that court abuse its discretion by denying the bankrupt's request to enjoin prosecution of the state court proceedings or by dismissing the adversary action seeking to have the defendants held in contempt.

### ORDER

Accordingly, the court ORDERS that the decision of the Bankruptcy Court IS AFFIRMED and that this appeal IS DISMISSED.

IT IS FURTHER ORDERED that the Clerk of the United States District Court is directed to return the file of this action to the Clerk of the United States Bankruptcy Court.