In re Bruce MOESEL, Debtor.

Bruce MOESEL, Plaintiff,

v.

Tully McCOY, District Attorney for Cleveland County, Oklahoma and James and Glenda Payne, Defendants.

Bankruptcy No. 85–4969–A.
Adv. No. 87–307.

United States Bankruptcy Court,
W.D. Oklahoma.

Aug. 26, 1988.

As Corrected Aug. 30, 1988.

Fred Morgan of Reynolds, Ridings & Hargis, Oklahoma City, Okl., for Bruce Moesel.

Irby R. Taylor, and Reginald D. Gaston, Asst. Dist. Attys., Norman, Okl. for Tully McCoy.

James K. Larimore of Durbin, Larimore & Bialick, P.C., Oklahoma City, Okl., for James and Glenda Payne.

## MEMORANDUM OF DECISION

RICHARD L. BOHANON, Chief Judge.

This is an action to enjoin prosecution of criminal proceedings pending in state court brought pursuant to § 105 of the Bankruptcy Code.

The debtor, Bruce Moesel, was the president and sole stockholder of Glasshouses by Moesel, Inc., which entered into a contract with defendants Payne to build a glasshouse extension on their home. The Paynes gave the corporation $11,192.61 for the materials which was deposited in the general account. No significant work was performed on the contract and only minor materials were purchased. The main enclosure was shipped to the corporation, but delivery was refused for nonpayment. The corporation subsequently sought relief in bankruptcy and Bruce Moesel personally filed bankruptcy shortly thereafter.

The Paynes made demand for the money and had filed an action for collection against the corporation which was stayed by the bankruptcy. The Paynes did not file a proof of claim or take any other action in Bruce Moesel's bankruptcy and he was discharged on August 20, 1986. On October 19, 1986, the district attorney filed criminal

charges against the debtor alleging embezzlement by a trustee under 21 O.S. § 1454. The charges were based upon a complaint filed by the Paynes with a copy of the contract and the cancelled check. The debtor now seeks to permanently enjoin the criminal proceedings as violative of his discharge.

■ It has been held that federal courts should refrain from enjoining state criminal proceedings commenced before the federal case. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). This is true even where Congress has specifically granted the authority to do so as under § 105 of the Bankruptcy Code. *Cf. Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). However, the Court in *Younger* declined to address "the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun". *Younger*, 401 U.S. at 41, 91 S.Ct. at 749. Such is the case here and we must decide whether the principles of *Younger* still apply where a state criminal prosecution is brought after bankruptcy is filed.

The timing distinction concerns whether the federal proceeding was brought merely as an effort to circumvent a state judgment, or whether the state proceeding was brought in an effort to circumvent a federal judgment. The situation where one uses bankruptcy to avoid a restitution order arising from a state criminal proceeding may be viewed differently than the situation where a state criminal proceeding is used to collect a debt which would otherwise be dischargeable in bankruptcy.

A look at the bases for the *Younger* decision shows that it is broad enough to cover all state criminal proceedings whenever brought. First, the Court notes the broad Congressional policy of restraining federal courts from issuing injunctions against state courts. *Id.* at 43, 91 S.Ct. at 750. This is demonstrated by the Anti–Injunction Act, 28 U.S.C. § 2283, which provides "[a] Court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by an act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments". Section 105 is a specific exception to this Act but should be exercised with the policy against injunctions in mind. Another strong showing of congressional policy is § 362(b)(1) of the Bankruptcy Code which specifically exempts criminal actions from the automatic stay.

The second principle of *Younger* is respect for state functions and, in particular, state police powers. *Id.* at 44, 91 S.Ct. at 750. The state has a legitimate interest in protecting its citizens from criminal behavior which is among the general powers given to the states by the Constitution and is present regardless of whether the criminal proceeding is commenced before or after the bankruptcy.

■ The final principle relates to the nature of injunctions. Injunctions should not be granted unless the potential harm is both great and immediate. *Id.* at 46, 91 S.Ct. at 751. There are several potential harms in a bankruptcy case. The first harm is payment of a debt otherwise discharged. If the debt is discharged, a subsequent criminal proceeding can always have the affect of making it nondischargeable. If the criminal proceeding ends before the bankruptcy is filed the restitution ordered may be a nondischargeable debt. *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). Restitution orders after bankruptcy will be new debts. The prior bankruptcy will not affect them and they will generally be nondischargeable in any future bankruptcy. This harm is present whenever the criminal proceeding is brought.

The second harm is unfairness to other creditors. This harm is present when creditors equally situated receive unequal treatment in bankruptcy. Again, any time restitution can be awarded the creditor may receive the advantage of full payment of a debt otherwise discharged in bankruptcy.

Finally, there is the related harm to the debtor's "fresh start". Once again, any time a debtor may be required to pay a debt outside of bankruptcy the debtor's

opportunity for a fresh start is diminished. All these harms will be present regardless of when the criminal proceeding is begun.

Based upon consideration of all these factors we conclude *Younger* is, therefore, equally applicable when a state criminal proceeding is brought after bankruptcy. Several courts have already applied these principles. *Barnette v. Evans*, 673 F.2d 1250 (11th Cir.1982) (where indictment for theft by deception occurred a few months after bankruptcy), *Munroe v. Lasch*, 73 B.R. 909 (E.D.Wis.1987) (bad check charge brought shortly after bankruptcy), *Contemporary Plumbing v. State of N.C.*, 16 B.R. 479 (E.D.N.C.1981) (bad check charge brought two weeks after bankruptcy).

■ Applying *Younger*, the test for whether an injunction should issue or whether a debtor has an adequate remedy at law is whether the state proceeding was brought in "bad faith" or merely for "harassment". A "defense against a single criminal prosecution" is generally an adequate remedy except under those exceptional circumstances. *Younger*, 401 U.S. at 46–49, 91 S.Ct. at 751–53.

Courts have taken two different approaches in determining what is bad faith in the bankruptcy context. Some have relied primarily on the principal motivation of the creditor regardless of whether the criminal action is initiated in good faith. *In re Penny*, 414 F.Supp. 1113 (W.D.N.C. 1976), *In re Kaping*, 13 B.R. 621 (Bankr.D. Ore.1981). The majority of courts have required a finding that the criminal action was brought in bad faith. *Barnette*, 673 F.2d at 1251; *Munroe*, 73 B.R. at 915; *Widdowson v. Taylor*, 44 B.R. 548, 549 (D.M.D.1984). The primary reason for the latter approach is the position that all good faith criminal actions have a state interest involved, independent of the interests of creditors. The state interest is a moral interest as opposed to the financial interest protected in bankruptcy. *Barnette*, 673 F.2d at 1251.

The pure bad faith test appears to be the better reasoned approach since the state interest is sufficient cause for federal courts not to enjoin state proceedings re-

gardless of the creditor's motives. In any case, there is no evidence here that the creditors were motivated by the prospect of restitution. The creditors did not even know restitution was a possibility until after the charges were filed. Thus, the principal motivation test could not be met.

Plaintiff relies primarily on the expression of the bad faith test in *Matter of Davis*, 691 F.2d 176, 179 (3d Cir.1982) in which the court stated:

The Davis' have made no showing that the Attorney General had any reason to doubt the validity of the charges, that he failed to exercise independent judgment in continuing these prosecutions, or that the complaining witnesses had insufficient evidence to support their allegations.

Plaintiff argues that the district attorney acted on insufficient information in pressing criminal charges and wholly failed to investigate them relying solely on information provided by the Paynes. The district attorney admittedly made no effort to question the debtor concerning the disposition of the monies paid by the Paynes.

In assessing the validity of plaintiff's argument it is necessary to look to the statute under which the charges have been brought. In *Davis* the charges were brought under a bad check statute. The statute itself merely required evidence that property was acquired and that the check was returned for insufficient funds. *Davis*, 15 B.R. 442, 444 (Bankr.Del.1981), *aff'd* 691 F.2d 176. Some elements which must be proved by the state under a statute may be inferred for the purpose of filing charges. *Munroe v. Lasch*, 73 B.R. at 915. In *Munroe* a debtor was charged under a bad check statute where intent not to pay had to be shown. The court found such intent could be presumed from a check returned for insufficient funds without an investigation.

The debtor-plaintiff here is charged under 21 O.S. § 1454 with embezzlement by a trustee. The statute requires a showing of fraudulent intent in obtaining the entrustment of money to oneself and appropriation of that money. The district attorney has

also relied upon 42 O.S. § 152 to find that money given to the debtor's corporation was to be held in trust. Certainly the funds were entrusted in a general sense to the corporation for a specific purpose. The district attorney had the signed contract, and the check for the funds which the Paynes had paid. The appropriation of the funds was reasonably inferred from the evidence that the contract was never performed, and that the debtor would not return any money. The fraudulent intent may be presumed. Such an element may generally be proved by circumstantial evidence. This is not a case where there was a substantial reason to doubt the validity of the charges or where it appears the district attorney failed to exercise independent judgment.

Accordingly, an appropriate judgment will be entered for the defendants, denying the request for an injunction.