**In re CREATIVE MEDIA PRODUCTIONS, INC.,**
**Debtor.**

**CREATIVE MEDIA PRODUCTIONS, INC., Plaintiff,**

**v.**

**Alan ANDERS, Defendant.**

**CREATIVE MEDIA PRODUCTIONS, INC., Plaintiff,**

**v.**

**John CAPELLUPO and Horizon Media, Inc., Defendants.**

**Bankruptcy No. 8800693.**
**Adv. Nos. 880066, 880064.**

United States Bankruptcy Court,
D. Rhode Island.

Nov. 30, 1989.

Thomas B. Orr, Macioci, Fisher & Orr, Newport, R.I., for plaintiff.

Steven M. Feingold, Warwick, R.I., for defendants.

Arnold Blasbalg, Trustee, Providence, R.I.

## DECISION AND ORDER DENYING REQUEST FOR INJUNCTIVE RELIEF

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on September 12, 1989 on: (1) the Complaint of the debtor, Creative Media Productions, Inc. ("Creative Media") against Alan Anders, to enjoin him from prosecuting a pending state court criminal complaint, and (2) the debtor's Complaint against John Capellupo and Horizon Media, Inc. to enjoin a similar state court criminal action being prosecuted by those defendants. Both complaints were tried on September 12, 1989, seeking the same relief (debt collection), and therefore we will address them jointly below.

The facts giving rise to these two state court complaints are as follows: At various times in 1987 and early 1988, Alan Anders and John Capellupo, the principal of Hori-

zon Media, Inc., provided artistic services to the debtor for which they became entitled to compensation, but for which they were not paid. In late January, 1988, in response to creditor pressure, Creative Media issued two checks to Horizon Media, Inc. in the amounts of $5,278 and $4,563, respectively. Horizon held these checks (allegedly at Creative Media's request) until March 24, 1988, when they were deposited. Both checks were returned for insufficient funds. In April, 1988, Horizon took legal action to collect its debt by filing a bad check complaint with the Newport Police Department, and sending a certified demand letter to the debtor. Horizon was advised by the Rhode Island Attorney General's Office to file its complaint in Quincy, Massachusetts, and on September 20, 1988, Horizon did file a complaint application with the Quincy (Massachusetts) District Court, which application was subsequently formalized into a sworn "Summons and Complaint," on October 20, 1988.

In a similar scenario, on April 22 and 29, 1988, Creative Media issued two checks to Alan Anders for payment of services rendered, in the amount of $4,120 and $1,633.71 respectively. Like the Horizon checks, these checks were also returned for insufficient funds. On September 29, 1988, Anders filed a criminal complaint against Cynthia Alten (President of Creative Media and signatory on the checks) with the Barrington Police Department, alleging "fraudulent check over $1,000," R.I.GEN. LAWS § 19–19–3.

Creative Media filed its Chapter 7 petition on October 13, 1988.[1] At the hearing to enforce the automatic stay, the debtor argued that both creditors, Anders and Horizon, were notified of the debtor's imminent intention to file bankruptcy, and in support thereof, relies on a letter dated September 14, 1988, which states that "I will be filing this bankruptcy before the end of September" (Defendant's Exhibit 2). The debtor contends that this evidence supports its position that both criminal actions

---

1. The debtor introduced as evidence a Chapter 7 petition which was dated May 16, 1988 (*see* Plaintiff's Exhibit B). However, this petition was never filed, and it was not until October 13, 1988, that a petition was actually filed with this Court on the debtor's behalf.

were instituted strictly as a collection device, for the purpose of harassing the debtor, and as a means of circumventing the automatic stay imposed by 11 U.S.C. § 362.

■ The narrow issue for determination is whether and under what circumstances may the bankruptcy court enjoin a state court criminal prosecution in aid of debt collection. Although, to our knowledge, the First Circuit does not have either a District Court or Circuit Court ruling on this question, other appellate courts, district courts and bankruptcy courts have addressed the issue. *See, e.g., Barnette v. Evans*, 673 F.2d 1250 (11th Cir.1982); *In re Taylor*, 44 B.R. 548 (D.Md.1984); *In re Milone*, 73 B.R. 452 (Bankr.D.N.H.1987). In reviewing these decisions, two tests seem to have emerged for determining whether state court criminal prosecutions may be enjoined by the bankruptcy court. One is the "principle motivation test." *See, e.g., In re Lake*, 11 B.R. 202 (Bankr.S.D. Ohio 1981); *Munroe v. Lasch*, 73 B.R. 909 (E.D.Wis.1987) (motivation test discussed but rejected). This test focuses on the purpose behind the criminal prosecution, i.e. whether it is being utilized strictly as a debt collection device, or whether it also includes public policy considerations.

The second test, which appears to represent the more recent trend in determining whether to enjoin a state court criminal prosecution, is the *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) "abstention doctrine." In *In re Taylor*, 44 B.R. 548, 549 (D.Md.1984), the court explained that "[t]he proper circumstances in which a federal court may enjoin a state criminal prosecution are severely circumscribed by *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In that case the Supreme Court noted that the principles of 'Our Federalism' and comity are major considerations in deciding whether courts of equity should interfere with criminal prosecutions. *Id.* at 44, 91 S.Ct. at 750 .... Except 'in very extraordinary circumstances,' which do appear to be present in the within case, state criminal proceedings may be enjoined only when there is a showing of 'bad faith' or 'harassment' or

the like." *In re Taylor, supra*, at 549 (citing *Younger*, 401 U.S. at 53, 91 S.Ct. at 754); *see also, Munroe v. Lasch, supra*, at 914.

In the context of a bankruptcy case, the court in *Munroe, supra*, held that "the 'bad faith' standard should apply and the court should grant an injunction only if it would not cause 'immediate irreparable harm' that is, unless the injunction is necessary to preserve a federally protected right." *Id.* at 915 (citing *In re First Texas Petroleum, Inc.*, 52 B.R. 322, 328 (Bankr. N.D.Tex.1985). In a more blunt opinion, the Eleventh Circuit in *Barnette v. Evans*, 673 F.2d 1250 (1982) observed that "11 U.S.C.A. § 105(a) gives a bankruptcy court no more authority to ignore the principles of *Younger v. Harris* than does the grant of general jurisdiction to a district court. The *Younger* court held that a federal court should not enjoin a pending state criminal prosecution except under extraordinary circumstances where there is a great and immediate danger of irreparable harm to plaintiff's federally protected rights that cannot be eliminated by his defense against a single prosecution." *Id.* at 1252. Additionally, the *Barnette* court warned that "[t]he purpose of bankruptcy is to protect those in financial, not moral, difficulty. The bankruptcy courts were not created as a haven for criminals. (citation omitted.) There is a public interest in every good faith criminal proceeding, especially on the presentment of a grand jury, which overrides any interest the bankruptcy court may have in protecting the financial interest of debtors." *Id.* at 1251; *see also In the Matter of Jeens of Puerto Rico*, 74 B.R. 16, 18 (Bankr.D.P.R.1987).

■ Based on what we perceive to be the more current, and certainly stricter, test for determining whether a bankruptcy court should enjoin a state court criminal prosecution, the *Younger v. Harris* abstention doctrine, we feel constrained to rule that the two state court criminal prosecutions at issue here should not be enjoined. Both complaints were initiated prior to Creative Media's filing of its Chapter 7

petition,[2] and although we are satisfied that both actions were brought primarily for the purpose of debt collection, we do not find that either was initiated in bad faith or for purposes of harassment. In this regard, we must also reject the debtor's argument that its September 14, 1988 letter put the defendants on notice of its impending bankruptcy filing. Until a petition is actually filed, a creditor cannot be held accountable for the debtor's stated intention to file bankruptcy. In addition, the plaintiff has failed to demonstrate or even to allege any extraordinary circumstances such that the denial of the injunction would result in "great and immediate danger of irreparable harm to plaintiff's federally protected rights." *Barnette, supra*, at 1252.

Accordingly,[3] Creative Media's request for an order enjoining the pending criminal prosecutions brought by Alan Anders, John Capellupo and Horizon Media, Inc. is DENIED.

Enter Judgment accordingly.

**2.** Horizon originally initiated a criminal action against the debtor in Newport, Rhode Island in April, 1988. Horizon was subsequently advised to refile its application in Quincy, Massachusetts, which it did in September, 1988. However, it was not until October 20, 1988, one week after the debtor filed its Chapter 7 petition, that the application was formalized into a "Summons and Complaint."

**3.** We make this ruling somewhat reluctantly, however, because of our personal preference to be able, in appropriate cases such as this, where there is no evidence that the debtor is a criminal seeking haven in the bankruptcy court, to apply the "principle motivation test." However, we recognize the reality that while bankruptcy courts dealing with this issue have seen fit to restrain state court "criminal" collection procedures, most appellate courts, at least recently, have applied the *Younger* "bad faith" test, which mandates the conclusion above.