**In re Wilfrid and Joanne SCOTT, Debtors.**

**Wilfrid SCOTT, Appellee,**

v.

**DEPARTMENT OF LABOR AND INDUSTRIES, Appellant.**

**Civ. A. No. 93–30059–FHF.**

United States District Court, D. Massachusetts.

May 9, 1994.

Laura L. Dushame, Northampton, MA, for Wilfrid and Joanne Scott.

Elisabeth J. Medvedow, Atty. General's Office, Crim. Bureau, Boston, MA, for Massachusetts Dept. of Labor and Industries.

## MEMORANDUM AND ORDER

FREEDMAN, Senior District Judge.

## I. INTRODUCTION

Before the Court, pursuant to 28 U.S.C. § 158(a), is an appeal from a judgment of the United States Bankruptcy Court for the District of Massachusetts. Appellant, the Department of Labor and Industries for the Commonwealth of Massachusetts ("DOL"), is requesting that this Court vacate a portion of a decision issued by United States Bankruptcy Judge James F. Queenan. Appellee Wil-

frid Scott ("Scott") has filed an opposition to the DOL's appeal.

## II. BACKGROUND

The Court will detail the findings made by Judge Queenan. *See In re Wilfrid Scott and Joanne Scott,* No. 91–42142–JFQ, slip op. (Bankr.D.Mass. March 8, 1993) ("Bankruptcy Court's Findings").

In the mid–1980s, Wilfrid Scott purchased Northeast Wire Company ("Northeast"), a company in which he worked for many years. After Scott's purchase Northeast began to experience financial difficulties due to the loss of a major client. Scott closed Northeast in December 1987. Thereafter, the United Electrical Workers' Union ("the Union"), which represented about forty former employees of Northeast, claimed that Scott and Northeast owed the employees vacation wages for 1988. The dispute ended up in arbitration, where an arbitrator found in favor of the Union. In November 1989, a judgment was entered by the Hampden Superior Court, against Northeast and Scott as President, in the amount of $55,120.

Later, in November 1989, ten former employees of Northeast, in conjunction with the DOL, filed criminal complaints against Scott in the Holyoke District Court for failure to pay earned vacation wages pursuant to Mass. Gen.Laws ch. 149, § 148. After a show cause hearing on January 26, 1990, the Holyoke District Court issued ten criminal complaints against Scott. He was arraigned on the charges in March 1990.

On August 30, 1990, the Holyoke District Court ruled that the charges would be continued without a finding until September 30, 1992 and, as terms of Scott's probation, ordered him to make restitution in the amount of $14,840. This amount represented 100% payment of the vacation pay due the aforementioned ten employees.

Wilfrid and Joanne Scott filed a joint petition in the United States Bankruptcy Court, under Title 11, United States Code, seeking relief under chapter 7, on August 16, 1991. In that petition, the Scotts requested a determination of dischargeability of a debt, declar-

atory judgment and injunctive relief against the DOL.

The Court pauses to comment that this is where a dispute arises. The bankruptcy court found that the DOL, the Probation Department and the Union were all listed as creditors of the Scotts. In addition, Judge Queenan stated that all of the creditors received notice of the Scotts' bankruptcy filing, the date and time of the creditors' meeting, and all other relevant hearing dates. Noting that a creditors' meeting was held on September 23, 1991, Judge Queenan recalls that, there being no objections, the bankruptcy court granted the Scotts a discharge. At the time of this discharge, $30,000 was still due on the civil judgment and $4,840 was still owing on the criminal judgment.

Alternatively, the DOL argues that it was not a listed creditor, nor could it be a creditor as a prosecuting agency, and as a result, the DOL did *not* attend the aforementioned creditors' meeting. Therefore, the DOL argues that, in enjoining the Commonwealth of Massachusetts from pursuing its criminal prosecution against Scott, the United States Bankruptcy Court erroneously determined that the DOL was listed as a creditor and received notice of all relevant dates from the bankruptcy court. Referring to the Notice of Commencement of this case under chapter 7—included in the record before the Court—the DOL points out that the only listed creditor is Lesser, Newman, et al., attorneys for the Union. In sum, the DOL maintains that it did not receive notice from the bankruptcy court, and upon review, the Court must agree that the DOL was not a listed creditor.

Later, on December 9 and 10, 1991, after the Scotts' discharge but prior to the closing of the case, the Holyoke District Court issued eleven additional criminal complaints against Wilfrid Scott for the same violations of Mass.Gen.Laws ch. 149, § 148, discussed above. Scott alleged that he did not become aware of these new charges until July of 1992 when he was arrested and brought into the Holyoke District Court. The DOL commenced the above criminal proceedings on behalf of eleven additional former Northeast employees who were parties to the aforementioned 1989 civil action.

On February 19, 1992, the chapter 7 trustee filed a report of no assets, and the case before the bankruptcy court was closed on March 3, 1992. However, Wilfrid Scott filed a motion to reopen the case on September 11, 1992 which was allowed on October 9, 1992. Appearing before the bankruptcy court for a second time, Wilfrid Scott alleged that the new criminal charges brought in December 1991 were (1) brought after his bankruptcy filing and after his discharge; (2) brought two years after the first criminal complaint was filed; and (3) were not all the claims which could be brought against him. Scott expressed his concern to the bankruptcy court that he would be vulnerable to the possibility of additional criminal prosecutions on the same charges. Scott argued that the DOL had brought the criminal charges against him in bad faith and with the intention of harassing and coercing him into paying the pre-bankruptcy petition debts that had previously been discharged.

Scott asked the bankruptcy court to (1) declare the remainder of the criminal restitution obligation—in the amount of $4,840—discharged, pursuant to 11 U.S.C. § 727, (2) declare the remainder of the civil judgment obligation—in the amount of $30,000—to have been discharged, pursuant to 11 U.S.C. § 727, and (3) permanently enjoin the DOL from proceeding criminally against Scott based on the aforementioned claims for vacation pay.

After consideration of the Scotts' requests, Judge Queenan issued an order dated March 8, 1993. *See In re Wilfrid Scott and Joanne Scott,* No. 91–42142–JFQ, slip op. at 2 (Bankr.D.Mass. March 8, 1993) ("Order"). In the Order accompanying his findings of fact and conclusions of law, Judge Queenan stated:

[1] Wilfrid Scott's criminal debt of $4,840 is not discharged ... [2] Wilfrid Scott's civil debt of $30,000 was discharged on December 3, 1991. And ... [3] that the Commonwealth of Massachusetts Department of Labor and Industries is enjoined from commencing or continuing to commence any criminal actions against the

Debtors stemming from the Union's 1988 wage claim.

*Id.*

On appeal, only the third of Judge Queenan's directives, enjoining the DOL from commencing or continuing to commence any criminal actions against the debtors, is before the Court. The other two findings will not be addressed or disturbed by this Court.

## III. STANDARD OF REVIEW

■ A district court reviews a bankruptcy court's judgment in the same manner in which the First Circuit Court of Appeals reviews lower court proceedings. *See In re DN Associates*, 3 F.3d 512, 515 (1st Cir. 1993). Findings of fact shall not be set aside unless clearly erroneous, and conclusions of law are reviewed *de novo* and are set aside only when they are made in error or constitute an abuse of discretion. *Id.; see* Fed. R.Bankr. 8013.

## IV. DISCUSSION

### A. Introduction

■ This appeal centers on the DOL's assertion that the bankruptcy court erred in enjoining the DOL from bringing a state criminal prosecution against Wilfrid Scott, pursuant to Mass.Gen.Laws. ch. 149, § 148.[1] In particular, the DOL argues that

> [t]he facts do not support the Court's conclusion that the [DOL] acted in bad faith in commencing a prosecution against Scott on eleven additional criminal charges, or its conclusion that the [DOL's] principal moti-

vation in initiating the prosecution was to collect on a discharged debt.

*See* Brief of the Commonwealth of Massachusetts at 6–7.

After tracing the legal authorities relied on by the bankruptcy court, the DOL surmises that "[t]he Court's findings and conclusions are erroneous." *Id.* at 11. Detailing the Court's alleged errors, the DOL asserts that (1) the determination that the prosecution was being brought to recover a debt for the individual complainants is purely speculative; and (2) the finding that the DOL acted in bad faith was improper. In opposition, Scott maintains that the court's findings both as to the DOL's motivation in bringing the criminal charges, and in detecting bad faith are supported by the record.

Before resolving the instant dispute, the Court will clarify the legal standard to be employed.[2] The bankruptcy court stated that courts "have developed three tests to determine whether a state court proceeding should be enjoined: (1) the principal motivation test, (2) the bad faith test, and (3) the test concerning a federally protected right." Bankruptcy Court's Findings at 8. The second and third tests, listed by the bankruptcy court, will be discussed as part of the *Younger v. Harris*, 401 U.S. 37, 53, 91 S.Ct. 746, 755, 27 L.Ed.2d 669 (1971), analysis undertaken by this Court, below.

Addressing the first test, "a trend appears to be emerging whereby courts are all but abandoning the 'principal motivation' test." *Munroe v. Lasch*, 73 B.R. 909, 914 (E.D.Wis.

---

1. Mass.Gen.Laws ch. 149, § 148 provides, in pertinent part:

> Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week, or to within seven days of the termination of the pay period during which the wages were earned if such employee is employed seven days in a calendar week, or in the case of an employee who has worked for a period of less than five days, hereinafter called a casual employee, shall, within seven days after termination of such period, pay the wages earned by such casual employee during such period, but any employee leaving his employment shall be paid in full on the following regular pay day, and, in

> the absence of a regular pay day, on the following Saturday; and any employee discharged from such employment shall be paid in full on the day of his discharge.... The word "wages" shall include any holiday or vacation payments due an employee under an oral or written agreement.
> ....
> Whoever violates this section shall be punished by a fine of not less than five hundred nor more than three thousand dollars or by imprisonment in a house of correction for not more than two months, or both.
> *Id.*

2. Pursuant to 11 U.S.C. § 105, the bankruptcy court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the] title." *Id.*

1987); *see Starr v. Virginia,* 147 B.R. 380, 382 (Bankr.E.D.Va.1991) ("[Debtor] advances the principal motivation test as the proper analysis for this court to employ [in determining whether to enjoin the Commonwealth from prosecuting him] ... [h]owever, recent cases have rejected this test as not meeting the bad faith standard established in *Younger v. Harris* [.]"); *In re Brown,* 105 B.R. 531, 535 (Bankr.D.S.D.1989) ("The 'principal motivation' test ... [has] been criticized that it is contrary to the spirit, if not the precise holding, of *Younger v. Harris* [.]"); *In re Alten,* 108 B.R. 16, 18 (Bankr.D.R.I.1989) ("Based on what we perceive to be the more current, and certainly stricter, test for determining whether a bankruptcy court should enjoin a state criminal prosecution, the *Younger v. Harris* abstention doctrine, we feel constrained to rule that the two state court criminal prosecutions should not be enjoined."). Furthermore, the principal motivation test has never been adopted by the First Circuit. Moreover, even if the Court had decided to apply the principal motivation test, here, the Court remains unconvinced that Scott has satisfied its tenets. Accordingly, Scott's attempt to succeed under "the principal motivation test" will fail.

Before proceeding further, a case worth noting is *In re Nashawaty,* 119 B.R. 382 (Bankr.D.Mass.1990). In *In re Nashawaty,* the debtor filed a complaint in bankruptcy court seeking to enjoin a criminal prosecution commenced by the Commonwealth of Massachusetts against the debtor for failure to pay statutorily imposed employee contributions under Massachusetts employment security law. *Id.* Thereafter, the Commonwealth moved to dismiss the debtor's complaint; and the debtor filed a motion for summary judgment as to the same.

Clarifying the dispute, the court stated that "the issue in this case appears to be whether or not the Commonwealth can be enjoined from proceeding with its criminal complaint even if the obligation underlying the complaint is dischargeable." *Id.* at 385. Answering its own query, the Court found:

> [Both] *United States v. Carson,* 669 F.2d 216 (5th Cir.1982), and *United States· v. Alexander,* 743 F.2d 472 (7th Cir.1984), hold that a discharge of a debt in bankruptcy does not prevent the imposition of a restitution order upon the debtor's subsequent conviction of a crime involving that debt.

*In re Nashawaty,* 119 B.R. at 385; *see also In re Davis,* 691 F.2d 176 (3rd Cir.1982); *Barnette v. Evans,* 673 F.2d 1250 (11th Cir. 1982) (bankruptcy courts cannot enjoin criminal prosecution that might result in restitution order); *cf. Younger,* 401 U.S. at 37, 91 S.Ct. at 746.

Surmising, the *Nashawaty* court held:

> In view of the facts that restitution orders are not dischargeable in Chapter 7 ... that the automatic stay does not apply to criminal proceedings, that the state statute permits the imposition of a fine or a jail sentence, as well as a restitution order, and in view of this case law cited, the Court hereby denies the [debtor's] motion for summary judgment and allows the Commonwealth's motion to dismiss.

*In re Nashawaty,* 119 B.R. at 385.

Here, chapter 149, section 148—the statute under which Scott is being prosecuted—permits the imposition of a fine or a jail sentence, as well as a restitution order. However, the Court need not belabor the factual similarities and discrepancies between *Nashawaty* and the instant case. Instead, the Court merely incorporates the same, and moves to its *Younger* analysis, and a determination of whether the bankruptcy court properly enjoined the DOL from commencing or continuing to commence its criminal prosecution.

### B. Younger Abstention Doctrine

The Supreme Court in *Younger v. Harris,* 401 U.S. at 53, 91 S.Ct. at 755, set forth the standard to be used in determining whether a federal court should enjoin a state criminal prosecution. The *Younger* Court stated "the settled doctrines ... have always ·confined very narrowly the availability of injunctive relief against state criminal prosecutions." *Id.* at 53, 91 S.Ct. at 755. Explaining its "vital consideration" behind the abstention principle, the *Younger* Court stated:

> The notion of "comity," that is a ·proper respect for state functions, a recognition of the fact that the entire country is made up

of a Union and separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left to perform their separate functions in their separate ways.

*Id.* at 44, 91 S.Ct. at 750; *see New Orleans Pub. Serv. Inc. v. Council of New Orleans,* 491 U.S. 350, 364, 109 S.Ct. 2506, 2516, 105 L.Ed.2d 298 (1989) ("That far-from-novel [*Younger*] holding was based partly on traditional principles of equity ... but rested primarily of the 'even more vital consideration' of comity[.]").

Moving on to the instances in which injunctive relief is available, the *Younger* Court held:

> There may, of course, be extraordinary circumstances in which the necessary *irreparable injury* can be shown even in the absence of the usual prerequisites of *bad faith* and *harassment.* For example ... "[i]t is of course conceivable that a statute might be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it."

*Id.* at 53–54, 91 S.Ct. at 755 (citation omitted) (emphasis added); *see Ankenbrandt v. Richards,* —— U.S. ——, ——, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468, 483 (1992) (*Younger* held that, absent unusual circumstances, a federal court could not interfere with a pending state criminal prosecution); *New Orleans Pub. Serv. Inc. v. Council of New Orleans,* 491 U.S. at 364, 109 S.Ct. at 2516 (In *Younger* we held that absent extraordinary circumstances, federal courts should not enjoin pending state criminal prosecutions).

In *Casa Marie, Inc. v. Superior Court of Puerto Rico,* 988 F.2d 252 (1st Cir.1993), the First Circuit, discussing the exceptions to the *Younger* doctrine, stated:

> Extraordinary circumstances may be found for example, where the state statute or rule under which the federal plaintiff is prosecuted or sued in state court is "flagrantly and patently violative of express constitutional prohibitions in every clause," or where the federal plaintiff demonstrates "'bad faith [prosecution], harassment or any other unusual circumstance that would call for equitable relief.'"

*Id.* 988 F.2d at 263, n. 9 (emphasis added), citing *Malachowski v. Keene,* 787 F.2d 704, 708 (1st Cir.), *cert. denied,* 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986); *Landrigan v. Warwick,* 628 F.2d 736, 743 (1st Cir.1980); *see also Bettencourt v. Board of Registration in Medicine,* 904 F.2d 772, 779 (1st Cir.1990).

The exceptions to the *Younger* abstention doctrine have been very narrowly construed by the Supreme Court. *See United Books, Inc. v. Conte,* 739 F.2d 30, 34 (1st Cir.1984), discussing *Kugler v. Helfant,* 421 U.S. 117, 126 n. 6, 95 S.Ct. 1524, 1531 n. 6, 44 L.Ed.2d 15 (1975) ("'bad faith' in this context generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction"); *Perez v. Ledesma,* 401 U.S. 82, 83, 85, 91 S.Ct. 674, 675, 676, 27 L.Ed.2d 701 (1971) ("[o]nly in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction ... is federal ... relief against pending state prosecutions appropriate"); *see also Bettencourt,* 904 F.2d at 779; *Malachowski v. Keene,* 787 F.2d at 709; *South Boston Allied War Veterans Council v. Zobel,* 830 F.Supp. 643, 650 (D.Mass.1993).

For example, in *Conte,* the First Circuit found that, "[o]n the facts of this case—six prosecutions over a two year period that resulted in convictions all but once—we cannot say that the *Younger* exceptions have been satisfied." *Conte,* 739 F.2d at 33. Accordingly, on the strength of the foregoing, the *Conte* court affirmed the district court's decision dismissing plaintiff's complaint that sought an injunction to enjoin future prosecutions.

Here, the bankruptcy court, in finding that the DOL exhibited bad faith, held:

> The Department brought the original [criminal] proceedings in March of 1990. Not until December of 1991, after the Debtor received his discharge on the civil complaint, did the Department file the additional complaints stemming from the same set of facts as the complaints filed in 1990. *It is evident that the principal motivation behind these new charges is the desire to collect on a discharged debt. Bad faith on the part of the Department is*

*evident.* This case is the type referred to by the Supreme Court in *Younger* as the "extraordinary circumstances" in which a federal court must enjoin a state criminal proceeding. Bankruptcy Court's Findings at 9–10 (emphasis added). In opposition, the DOL argues that "[t]he Bankruptcy Court ... did not have any evidence before it to warrant the finding that the [DOL] knew Scott had received a discharge before the eleven new criminal complaints were issued in the state court." Brief of the Commonwealth of Massachusetts at 13. In addition, the DOL contends:

> [T]he [Bankruptcy] Court's comment that the Department could have brought all the criminal charges against Scott at one time, rather than bring the initial ten complaints in 1990 and the additional eleven complaints in 1991 ... completely denigrates the independent authority and discretion of a prosecutor to determine when to bring criminal charges against an individual.

*Id.* at 13–14.

Attempting to ·refute the DOL's contentions, Scott asserts that (1) the finding by the bankruptcy court—that the principal motivation in bringing the criminal charges was to collect a debt—was not clearly erroneous; and (2) the multiple prosecutions brought against Scott did constitute bad faith on the part of the DOL.

█ Upon review, the Court finds that the problem with the bankruptcy court's decision is in that court's application of the dictated legal standard. As stated above, extraordinary circumstances necessitating federal intervention in a state court proceeding may only be found where the state statute under which the party is prosecuted in state court is " 'flagrantly and patently violative of express constitutional prohibitions in every clause,' or where the federal plaintiff demonstrates 'bad faith [prosecution], harassment or any other unusual circumstance that would call for equitable relief.' " *Casa Marie*, 988 F.2d at 262, n. 9.[3]

In the present case, the Court is faced with a situation similar to the one addressed in *Conte.* Neither side disputes that, in a subsequent prosecution of Scott under chapter 149, section 148, the DOL has a reasonable expectation of obtaining a valid conviction. *See Perez v. Ledesma*, 401 U.S. at 82, 83, 85, 91 S.Ct. at 674, 675, 676. In addition, after canvassing the record, the Court cannot conclude that the DOL's prosecution was undertaken in bad faith, and without hope of obtaining a valid conviction.

Moreover, Scott has not shown that the removal of the injunction would cause him the type of irreparable harm contemplated by the *Younger* Court.

> [T]he Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is "both great and immediate." Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered "irreparable" in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

*Younger v. Harris*, 401 U.S. at 46, 91 S.Ct. at 751 (citation omitted). Simply put, Scott has not satisfied the above standard.

In conclusion, the Court surmises that Scott has failed to demonstrate extraordinary circumstances—including irreparable harm, bad faith prosecution, harassment or any other unusual circumstance—that would call for equitable relief, and as a result, none of the exceptions to the *Younger* policy of abstention are applicable. Therefore, abstention from the criminal prosecution is the only appropriate action in this case. Accordingly, the bankruptcy court's decision, enjoining the criminal prosecution, will be reversed and the injunction will be vacated.

---

**3.** *It is clear that chapter 149, section 148 is not flagrantly and patently violative of any express constitutional prohibition. Accordingly, the sole remaining inquiry is whether Scott has demon-* strated bad faith prosecution, harassment or any other unusual circumstance that would call for equitable relief.

## V. CONCLUSION

For the reasons discussed above, the bankruptcy court's decision will be REVERSED insofar as the injunction enjoining the DOL's criminal prosecution will be VACATED; in all other respects the bankruptcy court's decision is AFFIRMED.

It is So Ordered.