**In re Robert M. BERG, d/b/a Berg Heating, Air Conditioning & Sheet Metal, Debtor.**

**Robert M. BERG, Plaintiff,**

**v.**

**Scott TUROW, Annette Turow, Wayne Kibar, Kathleen Kibar, Richard Alan Ginkowski and Robert J. Jambois, District Attorney, Kenosha County, Wisconsin, His Assistants, Employees, Agents and Successors, Defendants.**

**Bankruptcy No. 92–24793–DEI. Adv. No. 94–2260.**

United States Bankruptcy Court, E.D. Wisconsin.

Oct. 3, 1994.

Michael J. Rielly, Lake Geneva, WI, for plaintiff.

Asst. Atty. Gen. Thomas H. Taylor, Madison, WI, for defendants.

## DECISION

DALE E. IHLENFELDT, Bankruptcy Judge.

In this adversary proceeding, the plaintiff, Robert M. Berg (Berg), seeks to enjoin Rob-

ert J. Jambois, Richard Alan Ginkowski and the Kenosha County District Attorney's Office from prosecuting him in a criminal jury trial scheduled to commence on October 17, 1994 in the Kenosha County Circuit Court.[1] The court has jurisdiction under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

Berg filed a chapter 11 petition on July 29, 1992. On May 27, 1993 the case was converted to chapter 7, and on September 15, 1993 a chapter 7 discharge was entered. On April 28, 1994 and May 18, 1994 criminal complaints were filed against Berg and criminal warrants were issued. The first complaint was signed by a deputy sheriff and the second by a police detective. The complaints allege "theft by contractor" violations as defined in section 779.02(5) of the Wisconsin construction lien law and section 943.20(1)(b) of the Criminal Code of Wisconsin.

■ Actions that constitute a violation of the Wisconsin criminal "theft by contractor" statute will also give rise to a nondischargeable debt (defalcation while acting in a fiduciary capacity) under § 523(a)(4) of the Bankruptcy Code. *Burmeister Woodwork Co. v. Friedel,* 65 Wis.2d 293, 222 N.W.2d 647 (1974); *In re Schultz,* 9 B.R. 35 (Bankr. E.D.Wis.1980) (Aff'd on appeal); *In re Thomas,* 729 F.2d 502 (7th Cir.1984). The bankruptcy court has exclusive jurisdiction over § 523(a)(4) dischargeability proceedings [§ 523(c)(1) ], which must be filed within 60 days after the § 341 meeting [Rule 4007(c), Federal Rules of Bankruptcy Procedure]. Since no such proceedings were filed in Berg's bankruptcy case, debts of this nature were discharged.[2]

On August 26, 1994, Berg filed this adversary proceeding together with a motion for a temporary restraining order. The district attorney and his assistant have filed motions to dismiss or to abstain. A hearing was held on September 9, 1994 and September 30, 1994. Witnesses were Richard Ginkowski, the Assistant District Attorney; Larry Lannon, the debtor's bankruptcy attorney; Irene Berg, the debtor's mother; Wayne Kibar, a creditor; and Robert Berg, the plaintiff debtor.

As pointed out in *Younger v. Harris,* 401 U.S. 37, 43, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971), "Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." This principle is embodied in the Anti–Injunction Act, 28 U.S.C. § 2283. It provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The Court said,

> The precise reasons for this longstanding public policy against federal court interference with state court proceedings have never been specifically identified but the primary sources of the policy are plain. One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. *Id.* at 43, 91 S.Ct. at 750.

\*   \*   \*   \*   \*   \*

1. In addition to the relief sought against the office of the Kenosha County District Attorney, Berg has also asked the court to enjoin the other defendants from alleged actions to collect discharged debts. Those issues are not before the court at this time.

2. It has been tacitly assumed by Berg and the defendants, Jambois and Ginkowski, for purposes of this proceeding, that the claims of the Turows and Kibars were discharged. The record, as presented, indicates: the Turows were not listed in any of Berg's schedules; at no time was formal notice of Berg's chapter 11 or chapter 7 filing sent to the Turows; the Kibars were not listed in Berg's chapter 11 schedules; the Kibars were listed [as "Wayne Kibar"] for the first time in the chapter 7 schedules filed on July 1, 1993; the Kibars may not have received formal notice of the bankruptcy in time to file a nondischargeability proceeding under § 523(a)(4).

This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. *Id.* at 44, 91 S.Ct. at 750.

■ In order to overcome "the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances," *Id.* at 41. *Younger* requires that a party seeking an injunction must show:

(1) a statutory exception to the Anti–Injunction Act;

(2) extraordinary circumstances where there is danger of great and immediate irreparable injury; and

(3) the injunction will not "unduly interfere" with the legitimate activities of the States. *Id.* at 43–45, 91 S.Ct. at 750–51.

*Younger* suggests that the issuance of an injunction may be justified when the state statute at issue in the state court action is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph; or the state prosecution is not being made with any expectation of securing a valid conviction, but rather is a part of a plan to harass and discourage an individual from asserting his constitutional rights; or under other extraordinary circumstances calling for federal intervention. *Id.* at 53–54, 91 S.Ct. at 754–55.

■ Section 524(a)(2) of the Bankruptcy Code operates as an injunction against a civil or criminal action if it is an action to collect a debt that has been discharged in bankruptcy. "If the criminal prosecution is an action to collect a discharged debt, the prosecution is prohibited." *In re Brinkman,* 123 B.R. 318, 322 (Bankr.D.Minn.1991). Thus, § 105(a) [3] of the Code, together with the § 524 discharge injunction, is a viable exception to the Anti–Injunction Act, and satisfies the first prong of the *Younger* test. *In re Winkler,* 151 B.R. 807, 811 (Bankr.N.D.Ohio 1992).

■ The second prong of the *Younger* test, however, is a significant obstacle for a debtor to overcome. This is because certain types of injury, "in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." *Id.* at 46, 91 S.Ct. at 751.

■ Berg does not argue that the Wisconsin "theft by contractor" criminal statute is unconstitutional nor that the state prosecution is part of a plan to harass and discourage him from asserting some constitutional right. It is his position that these criminal proceedings were brought for the sole purpose of collecting debts that were discharged in bankruptcy and that he filed this injunctive proceeding to protect the integrity of the bankruptcy process and his own right to a discharge.[4] He contends that once the discharge was entered, the district attorney should not have proceeded with the criminal charges. He argues further that because the Turows and Kibars "had a chance to litigate last year" the dischargeability of their claims in bankruptcy court pursuant to § 523 of the Bankruptcy Code, the district attorney

---

**3.** Section 105 permits bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

**4.** According to the testimony of Wayne Kibar, the Kibars complained about Berg to the Pleasant

Prairie police department long before they knew he had filed under chapter 7. Their visit to the police department may even have occurred before Berg's chapter 11 case was converted to a case under chapter 7.

should be enjoined from continuing the actions.

Although the Court of Appeals for this circuit has not ruled on whether a criminal proceeding should be enjoined because of a bankruptcy discharge, it has addressed the issue of whether a defendant can be ordered to make restitution for debts that were discharged in bankruptcy. In *U.S. v. Alexander*, 743 F.2d 472 (7th Cir.1984), the defendant was placed on probation on condition that he make restitution to his victims. The defendant argued that "a discharge in bankruptcy precludes a district court from ordering restitution when a subsequent conviction involves debts covered by the discharge". In rejecting the defendant's argument, the court said:

> The bankruptcy proceeding is largely unconcerned with criminality, and discharge may occur regardless of how the debtor has incurred his debts, especially in cases such as *Carson* and the present one where defrauded creditors fail to seek an order of non-discharge from the bankruptcy court. The "fresh start" envisioned by the imposition of probation conditions is entirely different from the one resulting from discharge in bankruptcy. Fundamental to the imposition of probation is the belief that its conditions will result in the rehabilitation of the probationer at no cost to the public safety.

> \*    \*    \*    \*    \*    \*

> We discern nothing in the bankruptcy code that evinces a congressional intent to prevent sentencing judges from imposing such potentially rehabilitative probation conditions. Thus, we reject defendant's statutory argument.

As shown by the evidence, the following sequence of events occurred in this case.

*July 29, 1992* —Chapter 11 filed. The Turows and Kibars are not listed as creditors in the mailing matrix or the schedules, and no notice of the filing is sent to the Turows or the Kibars.

*August 3, 1992* —Berg allegedly entered into a written contract with Wayne Kibar. (Exhibit 5)

*May or June, 1993* —The Kibars, who live in the Village of Pleasant Prairie, complain to the Pleasant Prairie police department about Berg's failure to perform.

*May 27, 1993* —Chapter 11 case is converted to chapter 7.

*June 17, 1993* —Ginkowski letter faxed to Atty. Lannon. (Exhibit 5)

*June, 1993* —Atty. Lannon phoned Ginkowski.

*July 1, 1993* —Chapter 7 schedules filed. Wayne Kibar is listed as a creditor. The Turows are not listed.

*September 15, 1993* —Chapter 7 discharge entered.

*Approx. September, 1993* —First formal notice of Berg's bankruptcy is received by the Kibars "long after they had visited the Pleasant Prairie police station", according to testimony of Wayne Kibar.

*April or May, 1994* —Wayne Kibar's first contact with Ginkowski, according to testimony of Wayne Kibar.

*April 28, 1994* —Criminal warrant issued charging that Berg had failed to perform work on Turows' dwelling for which they had paid him $2,250.

*May 18, 1994* —Criminal warrant issued charging that Berg had failed to perform work on Kibars' dwelling for which they had paid him $11,900.

*May, 1994* —Irene Berg (debtor's mother) heard of criminal proceedings from TV or newspapers and phoned Ginkowski.

*May or June, 1994* —Berg, then living in Chicago, heard of the criminal proceedings from his mother and phoned Ginkowski.

In support of his contention that the criminal actions were brought for the purpose of collecting discharged debts, Berg refers to a June 17, 1993 letter that Ginkowski sent to Lawrence Lannon, Berg's bankruptcy attorney, and to phone conversations that Ginkowski had with Lannon, Berg's mother, and finally with Berg himself. The phone calls were instituted by the latter three persons.

Berg's attorney argues that in the course of these phone conversations Ginkowski offered to drop the charges if Berg would make restitution to the so-called "victims."

Ginkowski characterized the phone conversations somewhat differently. He said he had emphasized to the above persons that Berg should "obey the law" and complete the work for which he had been paid, and if he did so, it could have an effect on the prosecution. Ginkowski's letter to Lannon, sent on June 17, 1993, more than ten months before the criminal charges were filed, advised Lannon that Berg was under investigation and concluded with these statements:

> The bottom line at this point is that it would be in your client's best interests to resolve these matters *IMMEDIATELY*. This means fulfilling his obligations to all concerned. I expect this to be done *within seven days*. Whether or not he heeds this advice will have a significant bearing on my charging decision.

Regarding their phone conversation, Lannon said that Ginkowski described the charges, and that "I had the understanding that if I could get my client up there and get the work completed the prosecution would not go forward."

The foregoing facts do not indicate that these criminal cases were commenced for purposes of harassment, or undertaken in bad faith, or that the charges were flimsy or that the district attorney had no hope of obtaining a valid conviction. Berg says Ginkowski offered to drop the charges if Berg would make restitution, and that this was tantamount to an attempt to collect discharged debts. Acknowledging that he had strong feelings about contractors who broke the law, Ginkowski said the thrust of his remarks was that Berg should comply with the law and complete the work for which he had been paid. He said he was not trying to collect a debt but was concerned about the fraud that had been committed and that, "I've been interested in nailing Mr. Berg for a long time."

■ Whether Ginkowski told Berg and his mother he would drop the charges if Berg would repay the victims, or alternatively, whether Ginkowski suggested he would consider dropping the charges if Berg would complete the work for which he had been paid, is of little, if any, consequence. Nor is it of consequence whether Ginkowski was aware of Berg's discharge when the criminal warrants were issued. The evidence wasn't clear, and Ginkowski wasn't sure, if he knew about it at the time, but he observed, correctly, that it would not have affected his decision on whether or not to file charges. So long as he was acting in good faith and not merely seeking to collect a debt, the discharge was no bar. A state's attorney has prosecutorial discretion and must be free to investigate alleged violations of state law and to exercise that prosecutorial discretion in deciding whether or not to file criminal charges. *In re Schake*, 154 B.R. 270 (Bankr. Neb.1993). The evidence in this case shows clearly that Ginkowski was not merely seeking to collect a debt, but that he was acting in good faith in an effort to carry out his responsibilities as a public prosecutor.

■ Injunctive relief will not ordinarily be granted when there is an adequate remedy at law, and Berg has an adequate remedy at law. He has not shown that he will suffer great and immediate irreparable harm. He can assert his defenses in state court. The procedural and other safeguards afforded to him in the pending state criminal prosecution adequately protect his interests. The "cost, anxiety, and inconvenience of having to defend [himself] against a single criminal prosecution" is not sufficient to warrant the issuance of an injunction, nor is the fact that restitution may be ordered. Restitution as a sanction for criminal activity is not synonymous with debt collection activities. *U.S. v. Alexander*, 743 F.2d 472 (7th Cir.1984); *In re Padgett*, 37 B.R. 280, 285 (Bankr.W.D.Ky. 1983). Furthermore, Berg has the opportunity to defend himself in state court and avoid a restitution order. The court finds that the plaintiff in this case is in no danger of great and immediate irreparable injury, such as was defined in *Younger*, and that the plaintiff's request for an injunction must accordingly be denied.

**900**

The complaint seeks only injunctive relief against the defendants Richard Alan Ginkowski and Robert J. Jambois and the office of the District Attorney in Kenosha County, and they have moved to dismiss the complaint. The court has found that injunctive relief as to these defendants should not be granted. Accordingly, an order will be entered dismissing the complaint as to these defendants.

This decision constitutes the court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure and Rule 7052 of the Federal Rules of Bankruptcy Procedure.