**In re Randal Scot BRINKMAN, Debtor.**

**Randal Scot BRINKMAN, Plaintiff,**

**v.**

**CITY OF EDINA and Dennis Bible, Defendant.**

Bankruptcy No. 4–90–721.
Adv. No. 4–90–282.

United States Bankruptcy Court,
D. Minnesota.

Jan. 17, 1991.

be administered by the trustee for the benefit of joint creditors under § 363(h).

Michael T. Kallas, Harvey, Thorfinnson, Scoggin, Lucas & Kallas, P.A., Eden Prairie, Minn., for plaintiff.

Kim A. Anderson, Dorsey & Whitney, Minneapolis, Minn., for defendant City of Edina.

George C. Seltz, Mirviss, Seltz & Seltz, P.A., Minneapolis, Minn., for defendant Dennis Bible.

## MEMORANDUM ORDER

ROBERT J. KRESSEL, Chief Judge.

This proceeding came on for trial on the plaintiff's complaint to enjoin the City of Edina's criminal prosecution. Michael T. Kallas appeared for the plaintiff. Kim A. Anderson appeared for the City of Edina and George G. Seltz appeared for Dennis Bible. This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 103(b). This is a core proceeding. Based on the memoranda and arguments of counsel, and the file in this proceeding, I make the following memorandum order.

## FACTUAL BACKGROUND

Randal Brinkman is a contractor in the business of general construction and was a principal of Covenant Construction Company. In March of 1989, Dennis Bible contacted several contractors about remodeling his home and in May of 1989, Bible and Covenant Construction Company entered into a contract to remodel Bible's home for the price of $37,840.00. During the remodeling, the contract was modified and the contract price increased to approximately $55,000.00.

During the months of June through October of 1989 Bible made four payments to Brinkman totaling $44,686.08. After Bible made the October payment no more work was done on his home. In November of 1989, Bible learned that Brinkman was in severe financial difficulty and that some of the subcontractors had not been paid. Bible tried, but was unable, to contact Brinkman during November and December to find out what Brinkman had done with the $44,686.08.

During this period some of the subcontractors called Bible demanding payment for work done on his home. Bible began to investigate mechanics lien law and happened upon Minn.Stat. § 514.02.

> If a person, on any, improvement to real estate within the meaning of section 514.-01, fails to use the proceeds of any payment made to that person on account of such improvement by the owner of such real estate or person having any improvement made, for the payment for labor, skill, material, and machinery contributed to such improvement, knowing that the cost of any such labor performed, or skill, material, or machinery furnished for such improvement remains unpaid, and who has not furnished to the person making such payment either a valid lien waiver as to any unpaid labor performed, or skill, material, or machinery furnished for such improvement, or a payment bond in the basic amount of the contract price for such improvement, conditioned for the prompt payment to any person or persons entitled thereto for the performance of labor or the furnishing of

skill, material, or machinery for the improvement, shall be guilty of theft of the proceeds of such payment and upon conviction shall be fined not more than $3,000 or imprisoned not more than one year, or both.

Minn.Stat. § 514.02, subd. 1.

Bible then called the Minnesota Attorney General's office to inquire into possible criminal prosecution of Brinkman. The Attorney General's office instructed Bible to call the Hennepin County Attorney's office who in turn instructed Bible to call the Edina City Attorney's office.

On January 11, 1990, in accordance with Minn.Stat. § 514.02, Bible served Brinkman with a notice demanding payment in full for the payments made to Brinkman pursuant to the contract. A copy of the notice was sent to Marsh J. Halberg, prosecuting attorney for the City of Edina. When Brinkman failed to reply to the notice within the statutory period, Bible filed a complaint with the Edina Police Department. On January 28, 1990, a police report was compiled and sent to the prosecuting attorney's office.

On February 9, 1990, Brinkman filed for relief under Chapter 7 of the Bankruptcy Code. On February 27, 1990, the City prosecutor filed a criminal complaint against Brinkman for violating Minn.Stat. § 514.02, subd. 1. The prosecuting attorney did not consult Bible, seek his advice, or give him a voice in the decision to prosecute Brinkman.

Bible did not file a complaint to determine the dischargeability of Brinkman's debt to him and on May 8, 1990, Brinkman's debts, including his debts to Bible and the subcontractors, were discharged.

At Brinkman's first appearance on the criminal matter on May 9, 1990, Brinkman was given the chance to obtain an attorney. Brinkman hired Howard Bolter who subsequently appeared at three pretrial conferences. At the first pretrial conference on June 13, 1990, the City prosecutor discussed with Bolter options to avoid a trial. The prosecutor laid out four options. Brinkman could:

1. plead guilty to a gross misdemeanor as charged;

2. plead guilty to a reduced misdemeanor charge;

3. plead guilty under Minn.Stat. § 609.135 [1]; or

4. receive a continuance for dismissal on the condition that Brinkman pay restitution.

The prosecutor did not consult Bible before discussing plea options.

Bolter informed the prosecutor that Brinkman had filed bankruptcy and that it may affect the criminal prosecution. Nothing more about the effect of the bankruptcy on the criminal prosecution was discussed until after plea negotiations failed. On August 9, 1990, Bolter wrote a letter to the City prosecutors in which he informed them that the criminal prosecution was violating bankruptcy protection and asked them not to proceed any further. The City prosecutor responded that he would not discontinue the criminal prosecution.

The City of Edina prosecutes approximately 10,000 criminal cases per year. Virtually all of these cases are disposed of prior to trial. Of those cases that do go to trial, somewhere between 100–200 cases receive a court trial. Only 2–3 of the 10,000 cases result in a jury trial each year. The disposition of crimes that involve economic loss such as larceny, theft, and bad checks, virtually all result in restitution of some kind, either as a negotiated plea or a sentence by the court.

## FRAMING THE ISSUE

There are quite a few cases regarding the appropriateness of bankruptcy courts enjoining criminal prosecutions. These cases involve and frequently confuse at least three issues.

---

[1]. Section 609.135 provides that: "[A]ny court may stay imposition or execution of sentence and (a) may order noninstitutional sanctions without placing the defendant on probation, or (b) may place the defendant on probation with or without supervision and on the terms the court prescribes, including noninstitutional sanctions when practicable."

1. Does the prosecution violate the automatic stay provisions of § 362(a)?

2. Should the court use its equitable injunctive power under § 105 to enjoin the prosecution in order to promote certain bankruptcy goals?

3. Does the prosecution violate the discharge injunction found in § 524?

The answer to the first question is easy since § 362(b)(1) is a specific exception to the automatic stay for the commencement or continuation of a criminal action or proceeding. The answer to the second question is more problematic and involves discussion and issues about reorganization and rehabilitation, about the debtor's efforts and intention of paying certain underlying debts, the interference of the prosecution with the orderly administration of the case, and the intentions or good faith of the prosecuting authorities and the victim.

The third question, the only one present here, is whether the criminal prosecution violates the discharge injunction which provides in relevant part:

A discharge in a case under this title—

\* \* \* \* \* \*

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor, whether or not discharge of such debt is waived; ...

11 U.S.C. § 524(a)(2).

The automatic stay terminated as to the plaintiff and his property when the discharge was entered. 11 U.S.C. § 362(c)(2). The issues of the goals of reorganization and the debtor's attempt to deal with the underlying debt in his case are for the most part irrelevant. Therefore, the sole issue to be decided in this proceeding is whether the City's prosecution of the plaintiff is "the commencement or continuation of an action ... to collect," Brinkman's debt to Bible. Having thus narrowed the issue, many of the cases cited by all parties are irrelevant.

**YOUNGER v. HARRIS**

Much has been made in this proceeding of the Supreme Court's opinion in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its pronouncement that federal courts should refrain from intervening in state court criminal proceedings. *Id.* at 43, 91 S.Ct. at 750. However, once the issue in this proceeding is identified it is clear that the policies of *Younger* are not implicated here. When courts are dealing with the second question, discussed above then *Younger* may be applicable. However, in this case, the plaintiff is not asking me to use the bankruptcy court's equitable powers to enjoin the City. Rather, he is asking me to determine that the statutory provisions of § 524(a), by their own terms, enjoin the City's prosecution and if necessary, to enforce the statutory injunction with a specific judicial injunction.

This is made clear by the statutory provision dealing with enjoining state court proceedings:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. This court entered a discharge on May 8, 1990, which by statute enjoins certain proceedings. The injunction sought here is one to effectuate that discharge and enforce that statute. *Younger* simply does not apply.

**KELLY v. ROBINSON**

The City also makes much of the Supreme Court's decision in *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). However, *Kelly* has nothing to do with this case either. The issue in *Kelly* was whether a restitution order entered prior to the filing of the debtor's case as a condition of her probation was discharged or not. The Supreme Court assumed, without deciding, that such a restitution order was a debt[2] and determined that it was

---

**2.** The Court later specifically decided that restitution orders are debts. *Pennsylvania Dep't of*

*Pub. Welfare v. Davenport*, ⸺ U.S. ⸺, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990).

excepted from discharge as a fine or penalty under 11 U.S.C. § 523(a)(7). Any restitution order that may result from either a plea negotiation or a sentence in this case, is obviously not affected by the debtor's discharge since a discharge in a Chapter 7 case discharges the debtor only from debts that arose before the date of the order for relief. 11 U.S.C. § 727(b). Thus, the Supreme Court's discussion about whether or not restitution orders are excepted from discharge is irrelevant to our inquiry here.

## EDINA'S PROSECUTION

██ Under § 524, the discharge injunction stays a civil or criminal action *if* it is an action "to collect a debt" which has been discharged. Section 524 does not contain a provision which would except criminal prosecution from the § 524(a)(2) discharge injunction. Therefore, if the criminal prosecution is an action to collect a discharged debt, the prosecution is prohibited.

██ When a prosecution such as this one has an element of restitution it is difficult to decide whether the prosecution is "to collect" a debt or for some other legitimate purpose. While I am tempted to craft my own test, there is so much case law which has previously dealt with this issue I feel compelled to adopt one of the existing tests rather than strike out on my own. The three tests generally relied on are:

1. the bad faith test: see *In re Creative Media Productions, Inc.*, 108 B.R. 404 (Bktcy.D.R.I.1989); *Munroe v. Lasch*, 73 B.R. 909 (Bktcy.E.D.Wis.1987);

2. the irreparable harm test[3]: see *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Perez v. Ledesma*, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); and

3. the principal motivation test: see *In re Kaping*, 13 B.R. 621 (Bktcy.D.Or. 1981); *In re Whitaker*, 16 B.R. 917 (Bktcy.M.D.Tenn.1982).

Although the tests use different terminology, when applied in the context of the discharge injunction, all of the tests basically ask the same questions. What is this criminal prosecution all about? Is the criminal prosecution to vindicate the public good or is it to collect the debt for one of its residents? As a result, the principal motivation test most closely implements the statute itself and really expresses the intent of most courts which have faced this issue. The principal motivation test, which I adopt, was articulated a decade ago.

If it appears that the criminal prosecution has been instituted primarily to vindicate the rights of the public by punishing criminal conduct and to discourage such criminal conduct by others, the bankruptcy court will usually not interfere with the criminal process. However, if it appears that the principal motivation is not punishment or prevention but to recover a dischargeable debt either by a negotiated compromise of the criminal charge or by obtaining of an order of restitution after conviction, the bankruptcy court may enjoin criminal prosecution.

*In re Kaping*, 13 B.R. 621, 623 (Bktcy.D. Or.1981) (citations omitted).

██ The fact that restitution is allowed for or even if it is an inevitable by-product of the prosecution, does not mean that the prosecution is proscribed. Brinkman has the burden of proving by a preponderance of the evidence that the City's principal motivation in pursuing its criminal prosecution was to collect a debt which had been discharged. He failed to meet his burden. The evidence established that Brinkman's criminal matter was handled as an ordinary prosecution to enforce the State's criminal statutes and to vindicate public rights.

██ Bible filed a complaint with the City of Edina's police department. That complaint was investigated and a report was forwarded to the City prosecutor's office where the report was reviewed by Assist-

---

**3.** Some courts have relied on the irreparable harm test to determine if the criminal prosecution should be enjoined. The irreparable harm test may be helpful if the debtor filed a Chapter 11 or Chapter 13 case but I do not feel this test is helpful when the debtor has filed a Chapter 7 case. I assume any debtor in Chapter 7 will be irreparably harmed by a criminal prosecution whether the action is to collect a discharged debt or not.

ant City Attorney David McGee. McGee determined that the report should be acted on and filed a criminal complaint. At a pretrial conference, the City prosecutor gave Brinkman the standard options for settling the matter short of trial. Brinkman was allowed additional pretrial conferences in order to attempt to negotiate a plea but no settlement was reached. The judge found probable cause and set the matter on for trial.

This distinguishes this case dramatically from *In re Whitaker*, where the court found:

> The court is especially concerned about the ultimate goals of this criminal prosecution. It is a matter of common knowledge that creditors in Tennessee frequently resort to the threat of criminal prosecution to compel the payment of a civil debt. In many, if not most instances, criminal prosecutions brought under the bad check and similar statutes are ultimately resolved by the criminal charges being withdrawn in return for the payment of restitution and costs by the defendant. This is so engrained [sic] in the criminal system of this state that the creditor Martin referred to his practice of dealing with bad checks as 'turn[ing] them into the Sessions Court *for collection.*'

*In re Whitaker*, 16 B.R. 917, 922 (Bktcy.M. D.Tenn.1982) (emphasis in the original).

### BIBLE'S RIGHT TO RECEIVE RESTITUTION

The plaintiff also argues that Bible's motivation to collect the debts is sufficient to determine that the City's principal motivation was to collect discharged debts, therefore, Bible should be enjoined from participating in any award of restitution.

■ Although compensation may have been one reason Bible filed the complaint, Bible's intention is not controlling. It is the City attorney who is responsible for prosecuting cases. The City attorney used independent judgment in deciding that this

case should be prosecuted. Bible has no input on how the case proceeds, the terms of a settlement or the possibility of restitution payments. It is the City's motivation that is at issue not Bible's. In addition, Bible is not engaged in any action that is prohibited by § 524[4]. Although the court in *Whitaker* concluded that a creditor was prohibited from accepting payment on a discharged debt, this has never been the law. To the extent it was, § 524(f) was added in 1984 and specifically provides:

> Nothing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt.

11 U.S.C. § 524(f).

### CONTEMPT

The plaintiff asserts that the defendants intentionally violated the discharge injunction order and asks this court to find both the City of Edina and Bible in contempt. A party may be found in contempt if it knowingly and wilfully violated a specific court order. Since I have concluded that the discharge injunction has not been violated, this request is moot.

### CONCLUSION

The discharge injunction is not being violated by the City or Bible. Therefore, an injunction by the court is not required or appropriate and contempt is not called for.

### MINN.STAT. § 549.21

■ Bible has asked for reimbursement of attorney fees under Minn.Stat. § 549.21 which provides that a Minnesota state court may award costs and reasonable attorney fees and expenses if the opposing party acted in bad faith or asserted an unfounded position. This Minnesota statute is not applicable in federal court. *In re Robertson*, 105 B.R. 504, 507 (Bktcy.D. Minn.1989).

THEREFORE, IT IS ORDERED:

1. The plaintiff's request to permanently enjoin the City of Edina's criminal prosecution is denied.

---

**4.** If I enjoined Bible from accepting restitution while allowing the prosecutor to proceed, it would severely limit the prosecutor's negotiat-

ing options and the judge's sentencing options if Brinkman is convicted. In the long run, this could have unfortunate effects for Brinkman.

2. The plaintiff's request to permanently enjoin Bible from receiving restitution is denied.

3. Defendant Bible's request for an award of attorney fees under Minn.Stat. § 549.21 is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.