In re METROPOLITAN STEEL
FABRICATORS, INC.,
Debtor.

METROPOLITAN STEEL
FABRICATORS, INC.,
Plaintiff,

v.

Joseph W. MICHALSKI and Robert
G. Michalski, Defendants.

Bankruptcy No. 4–94–1988.

Adv. No. 4–94–532.

United States Bankruptcy Court,
D. Minnesota.

Jan. 5, 1996.

Stephen L. Wilson, Foley & Mansfield, P.L.L.P., Minneapolis, Minnesota, for Plaintiff/Petitioner.

Michael D. Schwartz, Schwartz, Wandling & Bergeson, P.A., Minneapolis, Minnesota, for Defendants/Respondents.

## MEMORANDUM ORDER

ROBERT J. KRESSEL, Bankruptcy Judge.

This proceeding came on for trial on November 13, 1995, on the plaintiff's motion to avoid certain transactions between it and the defendants. The defendants counter-claimed for breach of contract damages, costs and attorneys' fees. Stephen L. Wilson and Thomas J. Lallier appeared for the plaintiff; Michael D. Schwartz and David E. Wandling appeared for the defendants.

This court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, and Local Rule 201. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B) and (H).

## FACTUAL BACKGROUND

Metropolitan Steel Fabricators, Inc., is a Minnesota corporation that was in the business of fabricating structural steel and miscellaneous metals for industrial use. For the period of time pertinent to this proceeding, its three principal shareholders were Joseph Michalski who held 35% of the corporation's stock, his brother, Robert Michalski, who held 30% of the stock, and Daniel Eldridge who held 35% of the stock. These individuals also served as officers and directors of the corporation and received salaries and bonuses in these capacities. Typically, bonuses ranged from $70,000 to $125,000 annually and were determined at the end of the fiscal year.

In 1990, the Michalskis began negotiations with Metropolitan to redeem their stock. To this end, they executed four agreements dated February 28, 1991. The four agreements were entitled: (1) Agreement by Metropolitan Steel Fabricators, Inc., Redeeming All of Its Outstanding Shares of Stock Held by

Joseph W. Michalski and Robert G. Michalski, (2) Agreement Not To Compete and Consulting Agreement with Joseph W. Michalski, (3) Agreement Not To Compete and Consulting Agreement with Robert G. Michalski, and (4) Agreement Regarding Partial Payment.

The redemption agreement provided for Joseph Michalski to redeem his 777 shares for a purchase price of $474,820 and Robert Michalski to redeem his 666 shares for a purchase price of $406,990. The agreement provided for the purchase price to be paid in three different forms, that of cash payments totaling $50,510 to Joseph Michalski and $43,300 to Robert Michalski, transfers of personal property valued at $74,310 to Joseph Michalski and $63,690 to Robert Michalski, and transfers by quit claim deed of real property valued at $350,000 to Joseph Michalski and $300,000 to Robert Michalski. The agreement also provided for the Michalskis to be individually, jointly and severally liable for their proportionate share of any costs over $102,000 associated with "current asserted tax liabilities".

The two consulting and non-compete agreements provided for the Michalskis to each be paid $50,000 for their covenants not to compete and $100,000 in consulting fees. The Agreement Regarding Partial Payment provided for Metropolitan to pay $53,850 and $46,150 in bonuses to Joseph and Robert Michalski respectively, and for Metropolitan to repay $155,520 to Joseph Michalski and $136,371 to Robert Michalski for current notes and interest.[1] The agreement also indicated that the Michalskis were to be paid $100,000 as a credit towards the balance that Metropolitan owed them. Pursuant to these

agreements, Metropolitan owed the Michalskis a total of $1,577,086.07.[2]

On March 11, 1991, Metropolitan issued a check to the Michalskis in the amount of $100,000 and another to Joseph Michalski in the amount of $30,000 on April 15, 1991. On May 15, 1991, Metropolitan issued a check in the amount of $509,085.07 and two notes each in the amount of $75,000 and secured by its real property to the Michalskis.[3] On this date, Metropolitan also transferred the personal and real property to the Michalskis pursuant to the February agreements. All together, these transfers totaled $1,577,085.07.

## PROCEDURAL BACKGROUND

Approximately three years later, on April 20, 1994, Metropolitan filed a petition under Chapter 11. Robert and Joseph Michalski filed secured claims in the amounts of $96,714 and $100,329 respectively. I entered an order confirming a liquidating plan on September 19, 1994.

This adversary proceeding was commenced on October 14, 1994. On February 8, 1995, pursuant to 11 U.S.C. §§ 510(b) and 510(c)(2), I granted Partial Summary Judgment to Metropolitan and subordinated the Michalskis' claims to the claims of the general unsecured creditors and transferred the mortgages securing these claims to the estate.

On July 13, 1995, I granted Partial Summary Judgment to the Michalskis dismissing Metropolitan's fraudulent transfer claims pursuant to Minn.Stat. §§ 513.41 to 513.51 to the extent that the claims are defined as corporate distributions by the Minnesota Business Corporation Act[4] and are based on Metropolitan's redemption of the Michalski's shares of stock in Metropolitan.[5]

1. The total amount for the repayment of the notes and interest was later increased to $295,276.07 to account for additional accrued interest.

2. This amount includes the increase owed on the notes for additional interest. See n. 1.

3. The Michalskis entered into a Subordination Agreement with First Bank and Metropolitan on May 15, 1991, regarding the two notes.

4. Minn.Stat. 302A.011(10) defines a distribution as:

... a direct or indirect transfer of money or other property, other than its own shares, with or without consideration, or an incurrence or issuance of indebtedness, by a corporation to any of its shareholders in respect of its shares. A distribution may be in the form of a dividend or a distribution in liquidation, or as consideration for the purchase, redemption, or other acquisition of its shares, or otherwise.

5. Minn.Stat. § 302A.551(3)(d) provides:

Sections 302A.551 to 302A.559 supersede all other statutes of this state with respect to dis-

During the trial, on November 14, 1995, after Metropolitan had rested, the Michalskis made a motion for Judgment on Partial Findings pursuant to Fed.R.Civ.P. 52 which I granted in part granting the Michalskis judgment on Counts I, II, III, V to the extent that Count V is based on Minn.Stat. § 513.45, and VI. A written order was entered on November 15, 1995. As a result of these orders, the only issues left for determination are the amount of the Michalskis' claims and whether the transfers made by Metropolitan to the Michalskis pursuant to the non-compete and consulting agreements are avoidable pursuant to Minn.Stat. § 513.44.

## DISCUSSION

**I. The plaintiff failed to meet its burden of proving that it received less than reasonably equivalent value for its transfers to the defendants. Thus, the transfers pursuant to the non-compete and consulting agreements are not avoidable pursuant to 11 U.S.C. § 544(b) and Minn.Stat. § 513.44.**

 The plaintiff asserts certain remedies available to it pursuant to 11 U.S.C. § 544(b).[6] This provision, one of the "strong-arm" powers of the bankruptcy trustee, gives a trustee or, as here, a debtor-in-possession[7] the power to avoid certain transfers of a debtor that are voidable under applicable law by a creditor holding an unsecured claim. *Mixon v. Anderson, et al. (In re Ozark Restaurant Equipment Co., Inc.),* 816 F.2d 1222, 1226 (8th Cir.1987); *Wieboldt Stores, Inc. v. Schottenstein,* 94 B.R. 488, 506 (N.D.Ill.1988). As debtor-in-possession, Metropolitan stands in the shoes of a creditor

and may enforce the Minnesota fraudulent transfer statutes against the defendants. If Metropolitan is successful in avoiding the transfers, it can recover them from the defendants. 11 U.S.C. § 550(a).

 The Uniform Fraudulent Transfer Act, which was adopted by Minnesota in 1987,[8] provides remedies to creditors who are aggrieved by fraudulent transfers made by a debtor. The plaintiff bases Count V of its complaint on Minn.Stat. § 513.44(a)(2)[9] which permits relief upon a showing of constructive fraud in a debtor's transfer of assets without requiring the creditor to prove any actual intent on the debtor's part to harm creditors through the transfer.[10] This section provides that:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

\*　　\*　　\*　　\*　　\*　　\*

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

---

tributions, and the provisions of sections 513.41 to 513.51 do not apply to distributions made by a corporation governed by this chapter.

**6.** Section 544(b) provides:

The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

**7.** 11 U.S.C. § 1107(a) grants a debtor-in-possession, with few exceptions, the powers of a trustee serving in a case under Title 11.

**8.** Minn.Stat. §§ 513.41 to 513.51.

**9.** Count V of the complaint also sounds in Minn. Stat. § 513.45 but this portion of the complaint was decided from the bench during the trial.

**10.** Although the plaintiff grounds Count V of its complaint in Minn.Stat. § 513.44 generally, the plaintiff did not offer any evidence or argue that there was any actual intent to defraud creditors.

Minn.Stat. § 513.44. Thus, to prevail under this section, Metropolitan must have received less than a "reasonably equivalent value" for the transfers and (2) either was left with an "unreasonably small" amount of assets to carry on its business or intended to or should have foreseen that it would incur debts beyond its ability to pay as they became due. *SnyderGeneral Corporation v. Gibson, et al. (In re Gibson)*, 149 B.R. 562, 576 n. 12 (Bankr.D.Minn.1993); *Citizens State Bank of Hayfield v. Leth*, 450 N.W.2d 923, 926 (Minn. App.1990).

 Whether a transfer is made for a reasonably equivalent value is a question of fact. *Jacoway v. Anderson, et al. (In re Ozark Restaurant Equipment Co., Inc.)*, 850 F.2d 342, 344 (8th Cir.1988). The court must consider all aspects of the transaction and "carefully measure the value of all benefits and burdens to the debtor." *Christians v. Crystal Evangelical Free Church (In re Young)*, 152 B.R. 939, 945 (D.Minn.1993). The burden is on the trustee or the debtor-in-possession to show by a preponderance of the evidence that the debtor did not receive reasonably equivalent value for a transfer. *Id.* at 945; *First National Bank in Anoka v. Minnesota Utility Contracting Inc. (In re Minnesota Utility Contracting Inc.)*, 110 B.R. 414, 417–419 (D.Minn.1990).

 Here, the plaintiff failed to meet its burden of proving that it did not receive reasonably equivalent value for the transfers to the defendants. Regarding the non-compete and consulting agreements, the plaintiff, in effect, argued that the Michalskis' actual efforts pursuant to these agreements did not justify the amounts they were paid. However, Metropolitan failed to appreciate that the agreements obligated the Michalskis to be available to consult with it when it requested. Clearly, having the Michalskis' expertise available to it provided value to Metropolitan regardless of how much Metropolitan actually called on their expertise. Whether that value was reasonably equivalent to what the Michalskis were paid is a question of fact. The plaintiff offered no evidence of that value.

Similarly, not having to compete with its former principals had value but the plaintiff failed to provide any evidence of that value. Since the burden is on the plaintiff to prove lack of reasonably equivalent value, its claim fails for want of proof.

As Metropolitan has failed to meet its burden under the "reasonably equivalent value" prong required by Minn.Stat. § 513.44(a)(2), I do not need to determine whether Metropolitan was left with an "unreasonably small" amount of assets to carry on its business or intended to or should have foreseen that it would incur debts beyond its ability to pay as they became due.

## II. The defendants' counterclaims.

The defendants asserted five counterclaims. The first two counter-claims are for damages resulting from the plaintiff's default on the May 1991 notes. The third counterclaim is for breach of contract damages based on the stock redemption agreement which provided for the defendants to receive 65% of the net total receivable balance collected from the "Havens Steel Receivable" account. The fourth counter-claim is for damages incurred by the defendants through the wrongful conversion of the proceeds from the "Havens Steel Receivable" account. Finally, the fifth counter-claim is for costs and attorneys' fees incurred in answering the Complaint and is made pursuant to Minn. Stat. § 549.21, Subd. 2.

 Counts I, II, III and IV really go the allowance of the Michalskis' claims. The defendants filed two claims totaling $197,043, claim 159 for Joseph Michalski in the amount of $100,329 and claim 160 for Robert Michalski in the amount of $96,714. Included in their claim computations are the amounts owed to them on the May 1991 notes. These notes each specified a principal of $75,000 and interest thereon at a rate of 10% per annum. Thus, the total amount that Metropolitan owed the defendants on these notes as of the date of the filing of the petition is $172,448.62 or $86,224.31 each.[11]

The Internal Revenue Service filed a claim in the amount of $242,784.47 for tax deficien-

---

11. This amount includes $150,000 in principal and $22,448.62 in accrued interest to the date of the filing of the case.

cies and penalties incurred for the years 1987 through 1989, the period applicable to the stock redemption agreement. The Michalskis are responsible for 65% of this amount over $102,000 or $91,509.91 pursuant to the stock redemption agreement.[12] Proportionally, Joseph Michalski, as a 35% shareholder, is responsible for $49,415.35 and Robert Michalski, as a 30% shareholder, is responsible for $42,094.56 of this amount. If the Michalskis' tax responsibility to the estate is offset against their claims based on the 1991 notes, the Michalskis have claims against the estate totaling $80,938.71, one for Joseph Michalski in the amount of $36,808.96 and another for Robert Michalski in the amount of $44,129.75.

■ The third and fourth counter-claims go hand-in-hand and I shall address them concurrently. The plaintiff provided persuasive testimony at trial that it had received approximately $95,000 in 1992 from the "Havens Steel Receivable" account but that it had lost money on this job and had not netted any profit. Thus, pursuant to the stock redemption agreement, the defendants have no claim against the estate based on this account as there were no total "net receipts" received by the plaintiff.

■ The fifth counter-claim for costs is without merit. In their Joint Answer and Counterclaim, the defendants based this counter-claim on Minn.Stat. § 549.21, Subd. 2. However, in their trial memorandum, they argued that relief on this counter-claim was warranted pursuant to Fed.R.Bankr.P. 9011. This argument fails under either analysis. First, Minnesota statutes providing for the award of costs and reasonable attorney's fees where litigants acted in bad faith or asserted unfounded claims do not apply in federal court. *Brinkman v. City of Edina (In re Brinkman)*, 123 B.R. 318, 323 (Bankr. D.Minn.1991). Secondly, there was adequate factual and legal bases for the plaintiff to pursue its fraudulent transfer claims. That I have ruled in the defendants' favor in this action does not reflect on the reasonableness of the plaintiff's inquiry into the facts or its interpretation of pertinent law.

12. The stock redemption agreement holds them responsible for 65% of the amount of the tax

## CONCLUSION

Since the plaintiff failed to prove that it received less than reasonably equivalent value in exchange for the payments under the consulting and non-compete agreements, those transfers are not avoidable or recoverable by the plaintiff.

The defendants have total claims of $80,938.71, one for Joseph Michalski in the amount of $36,808.96 and another for Robert Michalski in the amount of $44,129.75. The other counter-claims are without merit.

THEREFORE, IT IS ORDERED THAT:

1. The payments by the plaintiff to the defendants under their consulting and non-compete agreements are not avoidable pursuant to 11 U.S.C. § 544(b) and Minn. Stat. § 513.44.

2. Claim 159 filed by Joseph Michalski is allowed in the amount of $36,808.96.

3. Claim 160 filed by Robert Michalski is allowed in the amount of $44,129.75.

4. The defendants shall recover nothing from the plaintiff on their counter-claims.

LET JUDGMENT BE ENTERED ACCORDINGLY.