**In re Floyd Carroll EVANS, Debtor.**

**Floyd Carroll Evans, Plaintiff,**

**v.**

**Bank of Eureka Springs; John Cross; Kenneth Elser; Carroll County Circuit Court; Hon. Larry Chandler; 19th Judicial District Prosecuting Attorney; Brad Butler; Blythe Whitehead; Mike Huckabee; Dick Barclay, Defendants.**

**Bankruptcy No. 97–80694M.**
**Adversary No. 98–8034.**

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

March 10, 2000.

Stanley V. Bond, Fayetteville, AR, for Floyd Carroll Evans.

Ainsley Lang, Little Rock, AR, for remaining Defendants.

Wade A. Williams, Holiday Island, AR, for Bank of Eureka Springs.

## MEMORANDUM OPINION

JAMES G. MIXON, Chief Judge.

The issue before the Court is whether the pending state criminal prosecution of Floyd Carroll Evans ("Debtor") is a continuation or commencement of an action to collect a debt from the Debtor in violation of the Bankruptcy Code's discharge injunction.

The Debtor filed this adversary proceeding to enjoin the Bank of Eureka Springs ("Bank"); John Cross, president of the Bank; and others from proceeding with the criminal prosecution of the Debtor. After a hearing on the merits of the complaint on November 15, 1999, at Fayetteville, Arkansas, the Court granted the motion for judgment as a matter of law in favor of all defendants except the Bank and Cross. The issue as related to the two remaining defendants was taken under advisement.

The Court has jurisdiction under 28 U.S.C. § 1334 & § 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(*O* ), and this Court may enter a final judgment in the case. The following shall constitute findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

The facts resulting in the criminal prosecution of the Debtor and the Debtor's subsequent filing of this adversary proceeding are as follows. On April 1, 1994, the Debtor executed a promissory note to the Bank in the sum of $460,000.00. The note was secured by a mortgage on real property, including 1,120 acres of land located in Carroll County, Arkansas. The Bank also had a perfected security interest in various equipment, including a 1964 D6 Caterpillar bulldozer and a 16–foot Glastron boat with 125 horse power Mercury motor.

On June 11, 1997, the Debtor filed a voluntary petition for relief under the provisions of chapter 7 of the United States Bankruptcy Code. The Bank was listed as a creditor holding a secured claim in the sum of $625,000.00. On September 19, 1997, the Debtor received a discharge, no creditor or party in interest having filed a complaint to deny the discharge or to de-

termine a particular debt nondischargeable under 11 U.S.C. § 523.

After the Debtor had petitioned for bankruptcy relief, the Bank alleged that it had uncovered the fact that the Debtor had sold the boat, motor and bulldozer without its permission and without remitting any of the monies received from the sale to the Bank. The Bank also alleged that it had discovered the Debtor had removed timber worth approximately $150,-000.00 from the mortgaged real property without the Bank's permission and remitted only $29,403.09 of the sale proceeds from the timber to the Bank.

The Bank complained to the sheriff's office of Carroll County, Arkansas, and the prosecuting attorney for Carroll County, Arkansas, and as a result of the complaint, a warrant was issued on May 4, 1998, charging the Debtor with three counts of the crime of defrauding a secured creditor in violation of Arkansas Code Annotated § 5–37–203.[1] The Hon. David A. Clinger, Circuit Judge of Carroll County, Arkansas, issued the warrant based on the sworn affidavit of Leighton Ballard, an investigator for the Carroll County Sheriff's office.

After the Debtor's arrest, his criminal attorney, Chad Mason, had discussions with the deputy prosecuting attorney handling the case, Kenneth Elser. They engaged in informal discovery and discussed the strengths and weaknesses of the criminal charges against the Debtor.

On May 22, 1998, the Debtor filed this adversary proceeding against the Bank and Kenneth Elser, in his capacity as Carroll County, Arkansas, prosecuting attorney. The complaint was styled as a "Motion for Contempt, Sanctions and for Injunction." The complaint was amended on May 27, 1998, to add as party defendants Hon. David S. Clinger, Circuit Judge of Carroll County, Arkansas, and Brad Butler, Prosecuting Attorney for the 19th Judicial District in the State of Arkansas.

A hearing was conducted on June 23, 1998, on the Debtor's complaint by the Hon. Robert F. Fussell, who denied the Debtor's prayer for an injunction.[2]

At the beginning of 1999, with the criminal case still pending, the 19th Judicial District was divided and residents of Carroll County elected their own prosecuting attorney and circuit judge while Butler remained prosecuting attorney of Benton County. In order to assist the new prosecuting attorney, Butler retained some Carroll County criminal cases, including the case against the Debtor. The Debtor's case was reassigned to Blythe Whitehead, one of Butler's deputy prosecuting attorneys.

Mason then conferred with Whitehead in an attempt to persuade her to dismiss the charges against the Debtor. Whitehead advised Mason that she thought the case was weak and she desired to dismiss the charges, but the case could not be dismissed without the concurrence of Butler, the prosecuting attorney.

Meanwhile, Cross, President of the Bank, was becoming dissatisfied with the lack of progress in the case and was particularly dissatisfied that Butler's office would not return his phone calls about the matter. Cross telephoned Dick Barclay, a member of Governor Mike Huckabee's administration and a personal friend of both Cross and Butler. As a result of Cross' phone call, Barclay contacted Butler and

---

1. The Arkansas Code provides:
   (a) A person commits the offense of defrauding secured creditors if he destroys, removes, cancels, encumbers, transfers, or otherwise disposes of property subject to a security interest with the purpose to hinder enforcement of that interest.
   (b) Defrauding secured creditors is a Class D felony.

Ark.Code Ann. § 5–37–203 (Michie 1987).

2. The Court apparently treated the complaint as a request for a temporary restraining order pursuant to Federal Rule of Bankruptcy Procedure 7065. The record reflects that the injunction was not granted, and a nunc pro tunc order denying the injunction was entered June 25, 1999.

advised him of Cross' dissatisfaction with Butler's failure to communicate.

Butler subsequently met with Cross and with Whitehead and concluded that the case would not be dismissed. He assigned a different deputy prosecuting attorney to represent the state in its case against the Debtor and is prepared to proceed with the prosecution.

Thereafter, on June 18, 1999, the Debtor filed a second amended complaint which added defendants Blythe Whitehead, Deputy Prosecuting Attorney; Mike Huckabee, Governor of the State of Arkansas; Dick Barclay in his official capacity; John Cross, individually; and the Hon. Larry, Chandler, Circuit Judge of Carroll County, Arkansas. On June 25, 1999, Judge Fussell recused in the matter, and the trial on the merits of the entire complaint was conducted by the undersigned on November 15, 1999, at Fayetteville, Arkansas.

At the trial on the merits, Barclay testified that he did not discuss the merits of the case with Butler and did not pressure him to continue the prosecution. He said his only participation was to put Cross and Butler in communication with each other. There was no evidence Governor Huckabee had any knowledge of or anything to do with the matter. At trial, the Debtor abandoned his claims against the Hon. Mike Huckabee and Kenneth Elser and abandoned all issues of contempt and damages so that the only relief sought was an injunction. The Court announced that the matter was being treated as a final hearing for an injunction pursuant to Federal Rule of Bankruptcy Procedure 7065 without objection by the parties present.

The Debtor argues in his brief that the Bank and Cross should be permanently enjoined under 11 U.S.C. § 105(a) in order to enforce the discharge injunction found in 11 U.S.C. § 524 that prohibits attempts to collect debts discharged by 11 U.S.C. § 727. He argues that the criminal prosecution is a bad faith use of the state criminal code to collect a discharged debt on behalf of the Bank, and that Cross and the Bank have engaged in a conspiracy to violate the discharge injunction. The Debtor points to evidence in the record that establishes Debtor's innocence of the criminal charges brought against him.

The defendants argue that the prosecution is not brought in bad faith and essentially that this Court should not interfere with the state criminal matter under the facts of this case.

## DISCUSSION

A discharge acts as an "injunction against the commencement or continuation of an action ... to collect, recover ... any such [discharged] debt as a personal liability of the debtor...." 11 U.S.C. § 524(a)(2) (1994).

This provision of the Bankruptcy Code does not exclude criminal prosecution from the injunction if the prosecution involves an action to collect a discharged debt. *In re McMullen,* 189 B.R. 402, 405 (Bankr.E.D.Mich.1995) (stating that in certain circumstances, a criminal prosecution may violate section 524); *In re Kilpatrick,* 160 B.R. 560, 570 (Bankr.E.D.Mich.1993) (opining that the state cannot punish a debtor for failure to pay a debt dischargeable in bankruptcy); *Brinkman v. City of Edina (In re Brinkman),* 123 B.R. 318, 322 (Bankr.D.Minn.1991) (stating that section 524 does not contain a provision excepting criminal prosecution from the discharge injunction); *Brown v. Shriver (In re Brown),* 39 B.R. 820, 828 (Bankr. M.D.Tenn.1984) (holding that bankruptcy courts must protect debtors from efforts to collect discharged debts even if such debt arose from criminal conduct).

Courts have devised three different approaches to determine whether a criminal prosecution is an effort to collect a discharged debt or to further some other legitimate purpose. *In re Brinkman,* 123 B.R. at 322. These approaches include the bad faith test, irreparable harm test, and principal motivation test.

Under the bad faith test, a criminal prosecution involving a discharged debt may be enjoined only in the presence of some type of bad faith, such as harassment to coerce payment of a debt. *Creative Media Prod., Inc. v. Anders (In re Creative Media Prod., Inc.)*, 108 B.R. 404, 406 (Bankr.D.R.I.1989) (quoting *In re Taylor*, 44 B.R. 548, 549 (D.Md.1984)); *Munroe v. Lasch*, 73 B.R. 909, 914 (E.D.Wis.1987) (quoting *Younger v. Harris*, 401 U.S. 37, 53, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)); *In re Jerzak*, 47 B.R. 771, 773 (Bankr. W.D.Wis.1985) (ruling that a criminal proceeding is not brought in good faith if the complaining witness had insufficient evidence to support his allegations, the prosecutor has reason to doubt the charges, or the prosecutor fails to exercise independent judgment) (citing *Davis v. Sheldon (In re Davis)*, 691 F.2d 176 (3d Cir.1982)).

Under the irreparable harm test, the question is whether there is an immediate threat to the defendant's federally protected rights that cannot be eliminated by a single prosecution. *Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Perez v. Ledesma*, 401 U.S. 82, 85, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971).

The principle motivation test asks whether the prosecutor's purpose is punishment and prevention or the prohibited goal of recovery of a discharged debt through plea bargain or restitution. *Whitaker v. Lockert (In re Whitaker)*, 16 B.R. 917, 922 (Bankr.M.D.Tenn.1982) (finding the motivation of the prosecutor was not punishment but the collection of a debt); *Kaping v. Oregon (In re Kaping)*, 13 B.R. 621, 623 (Bankr.D.Or.1981) (holding a criminal prosecution may be enjoined where primary motive of the prosecutor is to collect a discharged debt). See also, 4 Collier on Bankruptcy ¶ 524.02[2][b] (Lawrence P. King et al. eds., 15th ed. rev.1999) (stating some courts have enjoined criminal prosecutions when circumstances revealed collection motive).

Many courts conclude that the irreparable harm test as promulgated by the United States Supreme Court in *Younger v. Harris* is inapplicable to facts similar to those of this case because *Younger* is only applicable when state proceedings are pending prior to the institution of any federal action. *Younger*, 401 U.S. at 41, 91 S.Ct. 746; *Howard v. Allard*, 122 B.R. 696, 700 (W.D.Ky.1991); *Winkler v. Rickert (In re Winkler)*, 151 B.R. 807, 811 (Bankr. N.D.Ohio 1992). But see *In re Moesel*, 89 B.R. 895, 897 (Bankr.W.D.Okla.1988) (holding *Younger* applicable when state court proceeding is brought against the debtor after bankruptcy filing).

In substance, the relief sought here is the enforcement of the existing discharge injunction provided by section 524; the Debtor does not require a separate injunction under section 105(a) to obtain the relief he desires. Therefore, the test of whether the section 524 discharge injunction has been or will be violated by the pending criminal prosecution should depend on the principal motivation for the prosecution. This test subsumes the bad faith and the irreparable harm tests, all of which "basically ask the same questions. What is this criminal prosecution all about? Is the criminal prosecution to vindicate the public good or is it to collect the debt for one of its residents?" *In re Brinkman*, 123 B.R. at 322.

As a general principle, the law presumes that public officials conduct themselves in good faith. *Linan–Faye Constr. Co. v. Housing Auth. of Camden*, 49 F.3d 915, 924 (3d Cir.1995); *Hoffman v. United States*, 894 F.2d 380, 385 (Fed.Cir. 1990) (quoting *Guy v. U.S.*, 221 Ct.Cl. 427, 608 F.2d 867, 870 (1979)). Accordingly, the debtor must prove that the prosecution is in bad faith. *In re McMullen*, 189 B.R. at 407. Furthermore, the intentions of the complaining witnesses are not controlling in judging the good faith of the criminal prosecution. *In re Brinkman*, 123 B.R. at 323 (examining the city attorney's motivation, not that of the complaining witness); *Ticket Plus, Inc. v. Makoul (In re Ticket Plus)*, 103 B.R. 574, 577 (Bankr.M.D.Pa.

1989) (quoting *Davis v. Sheldon,* 691 F.2d 176 (1982)).

In determining the principal motivation for the prosecution, the court asks whether the prosecutor has alleged more than failure to pay a debt and whether the debtor's alleged conduct is morally reprehensible. *In re McMullen,* 189 B.R. at 405; *Salecki v. Virginia (In re Salecki),* 51 B.R. 364, 367 (Bankr.E.D.Va.1985) (stating that a prosecution to punish the criminal conduct of the debtor and deter others should not be enjoined) (quoting *In re Taylor,* 16 B.R. 323 (Bankr.Md.1981)). Where there is a legitimate motivation, the prosecution will not be enjoined because the bankruptcy courts "were not created as a haven for criminals." *Barnette v. Evans,* 673 F.2d 1250, 1251 (11th Cir.1982) (citing H.R.Rep. No. 95–595, at 342 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6299).

The fact that restitution may be required by the state criminal court does not render a prosecution in bad faith because restitution does further interests of the state. *Fussell v. Price (In re Fussell),* 928 F.2d 712, 716 (5th Cir.1991) (holding when the victim has no control over whether restitution is awarded or the amount of restitution, the decision turns on the penal interests of the state, not the victim's injury) (citing *Kelly v. Robinson,* 479 U.S. 36, 52–53, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)); *In re Brinkman,* 123 B.R. at 323.

Under the facts in this case, the Debtor has failed to establish that this prosecution is pursued in bad faith or for the primary purpose of collecting a dischargeable debt from the Debtor individually. The duly elected prosecuting attorney in charge of prosecution has personally reviewed the case and is determined to proceed. The allegations against the Debtor for which criminal sanctions are sought is the Debtor's alleged fraud of selling mortgaged property without permission, not his failure to pay the debt owed to the Bank. Thus, it appears that the state's motive is not to collect a discharged debt. Furthermore, the Debtor's alleged criminal conduct is morally reprehensible, and if proven should not go unpunished simply because the Debtor has received a discharge in bankruptcy.

The prosecutor has expressed reservations about whether restitution will be available to the Bank if the State wins a conviction. The statute itself does not require restitution. The fact that the Debtor might negotiate his way through these charges by making the Bank whole or by making some other type of restitution does not, in itself, show a bad faith motive on the part of the prosecution. The assessment of restitution does not automatically violate the discharge injunction because, in addition to compensating the victim for his injury, restitution furthers the penal and deterrent interests of the state.

The Debtor emphasizes in his brief that Cross has asked for a number of concessions from the Debtor in exchange for dropping the charges against the Debtor. However, the motivation of the state and its prosecutor, and not the Bank and Cross, are controlling factors in deciding whether to enjoin the state prosecution. It is not at all clear from the evidence presented that the prosecution will hinge on whether the Debtor concedes to the Bank's suggestions regarding the swapping and buying of certain real property.

Although the Debtor never testified, the evidence presented on his behalf does not dispute that the mortgaged property was sold, but addresses the issue he raises mostly in mitigation that the Bank was not injured economically by his action and that he transferred the bulldozer and boat with the Bank's permission. The evidence in this record certainly establishes a prima facie case that the Debtor committed a substantial crime, and the State of Arkansas is justified in seeking criminal sanctions. The Defendant will have every opportunity in the state court to offer evidence of mitigation and defenses to the allegations. *See, e.g., Berg v. Turow (In re Berg),* 172 B.R. 894, 899 (Bankr. E.D.Wis.1994) (stating that debtor would

have opportunity to assert defenses in state court); *Ticket Plus, Inc. v. Makoul (In re Ticket Plus, Inc.)*, 103 B.R. 574, 577 (Bankr.M.D.Pa.1989) (finding that debtor's evidence would be properly presented in the state criminal action and had no bearing on whether to enjoin the criminal prosecution).

Therefore, for these reasons the Court finds that the State of Arkansas is not barred by the discharge injunction contained in 11 U.S.C. § 524 from proceeding with criminal charges against the Debtor of defrauding a secured creditor and that the Debtor has not established that he is entitled to any injunction against the named defendants.

IT IS SO ORDERED.