**In re Floyd Carroll EVANS.**

**Floyd Carroll Evans, Plaintiff,**

v.

**The Bank of Eureka Springs, et al., Defendants.**

Bankruptcy No. 5:97–BK–80694M.
Adversary No. 5:98–AP–8034.

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

June 25, 2003.

Patricia Van Ausdall Bell, Attorney General's Office, James F. Dowden, James F. Dowden, P.A., Ainsley H. Lang, Attorney General's Office, Richard D. Taylor, Fridley, Eldrege & Clark, Little Rock, AR, Wade A. Williams, Attorney at Law, Holiday Island, AR, for defendants.

Stanley V. Bond, Attorney at Law, Fayetteville, AR, for plaintiff.

### ORDER

JAMES G. MIXON, Chief Judge.

On August 31, 2001, Floyd Carroll Evans ("Debtor") filed a motion for attorney's fees, costs and sanctions pursuant to Rule 9011 and Rule 7054 of the Federal Rules of Bankruptcy Procedure against Gary Kleck

("Kleck"), John Cross ("Cross") and the Bank of Eureka Springs, Arkansas ("Bank"). The motion is brought pursuant to an adversary proceeding involving two hearings in the Bankruptcy Court. Cross and the Bank of Eureka Springs were named as party defendants in this adversary proceeding, and Kleck was a witness called on behalf of Cross and the Bank at one of the hearings.

The motion alleges that Kleck, Cross and the Bank committed fraud on the Bankruptcy Court by testifying falsely in the proceedings in the Bankruptcy Court concerning the appropriate scope of the discharge injunction as it applied to a criminal proceeding. The criminal proceeding was initiated against the Debtor by the State of Arkansas at the insistence of the Bank after the Debtor's discharge was granted.

Kleck, Cross and the Bank responded to the motion by denying that they committed fraud on the Court or that they testified falsely at the hearings. The Bank and Cross assert an additional defense of res judicata because of a previously adjudicated state court civil action for malicious prosecution brought against Cross and the Bank.

The Court has jurisdiction under 28 U.S.C. § 1334 and § 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O), and this Court may enter a final judgment in this case.

## BACKGROUND

The conflict between the parties stems from a 1994 loan from the Bank to the Debtor for $460,000.00, which was used to purchase 1120 acres of undeveloped real property in Carroll County, Arkansas. As collateral for the loan, the Debtor granted the Bank a lien secured by a mortgage dated April 1, 1994 in the purchased acreage and in other property.

The mortgage specifically prohibited the removal of timber from the encumbered acreage. Despite this prohibition, the Debtor and the Bank apparently anticipated that the removal of some timber would be necessary to prepare the land for cattle raising and that some or all the proceeds from the timber cut would be applied to repay the loan.

The Debtor began harvesting the timber from the acreage in November 1994, and the timber cutting continued through fall 1995. Timber cut from this acreage netted the Debtor approximately $150,000.00 to $160,000.00. Of this sum, the Debtor applied approximately $30,000.00 of the proceeds to repayment of the $460,000.00 loan in late 1994 and early 1995. According to the Debtor, he used the remaining proceeds to improve the land for cattle raising.

Experiencing financial setbacks, the Debtor defaulted on the promissory note and mortgage in December 1996. On June 11, 1997, the Debtor filed for bankruptcy relief under the provisions of chapter 7 and subsequently received a discharge. In 1997, the Bank foreclosed on the collateral. In the spring of 1998, the Bank met with the deputy prosecuting attorney of Carroll County and filed a criminal complaint arising out of the Debtor's harvesting timber and other acts not relevant to this motion for sanctions. The Debtor requested the Bankruptcy Court to issue a temporary restraining order halting the criminal prosecution. In a hearing before the Honorable Robert F. Fussell on June 23, 1998, Kleck was called as a witness to testify. Following the hearing, the Debtor's request was denied.

Subsequently, the Debtor sought an injunction to enjoin the prosecution. At a hearing on November 15, 1999, Cross was called to testify. This Court subsequently

entered its order March 11, 2000, declining to enjoin the prosecution. *See Evans v. Bank of Eureka Springs (In re Evans),* 245 B.R. 852 (Bankr.W.D.Ark.2000).

The criminal case proceeded to trial on June 28, 2000, at which time both Kleck and Cross testified. At the close of the prosecution's case, the Circuit Court of Carroll County dismissed all charges because the Court found they were barred by the applicable statute of limitations. The Debtor then sued the Bank and Cross in the Circuit Court of Carroll County for malicious prosecution and obtained a $400,000.00 judgment. That judgment was affirmed on appeal. *See Bank of Eureka Springs v. Evans,* —— Ark. ——, 109 S.W.3d 672, 2003 WL 21290919 (2003) (Thornton, J., dissenting).

After the award of judgment, the Debtor filed this motion for sanctions against Kleck, Cross, and the Bank, alleging that Kleck and Cross testified falsely at the two bankruptcy court hearings with regard to the timber cut on the mortgaged property. The Debtor argued in his motion that their testimony contradicted statements they made later at the criminal trial.

A hearing on the matter took place on April 17, 2003, after which the Court took the matter under advisement. The transcripts of testimony given at the two previous bankruptcy hearings on June 23, 1998, and November 15, 1999, were made a part of the record. Additionally, excerpts from testimony given in the criminal case on June 28, 2000, were admitted into evidence.

### THE ALLEGEDLY FALSE TESTIMONY BY KLECK

The Debtor's motion for sanctions alleges specifically the following, "When Mr. Kleck testified [at the criminal trial] he testified that the [Debtor] had received permission from the Bank of Eureka Springs to cut timber, that the Bank had actual knowledge of the timber cut and that the [Debtor] had at least paid part of the proceeds of the timber cut to the Bank of Eureka Springs."(Motion for Award of Attorney Fees and Costs, and for Sanctions, hereinafter "Motion," at ¶ 8.)

The motion alleges that Kleck testified differently at the Bankruptcy Court hearing on June 23, 1998, that "the Bank of Eureka Springs had given no permission for the timber cut nor had any knowledge of it and . . . he also denied that the Bank of Eureka Springs had received any of the proceeds of the timber cut." (Motion at ¶ 8.)

The Debtor's allegations of the conflict in the testimony do not accurately characterize the testimony that was given at the criminal trial. When asked at the criminal trial whether the Debtor had been given permission to cut the timber, Kleck replied, "Not any written permission or anything like that, no" (Pl.'s Pre–Trial Submissions, Ex. B, June 28, 2000 Tr. at 32.) When asked, "Were you ever approached by the [Debtor] at any time after that seeking permission to cut the timber off of the 1120?" Kleck responded, "No." (Pl.'s Pre–Trial Submissions of Undisputed Fact, Ex. B, June 28, 2000 Tr. at 33.)

On cross-examination, Kleck acknowledged that he knew the timber was going to be cut at some point when he stated, "Well, I mean, I knew it was going to be cut. I don't know if that constitutes permission or not. I don't know." (Pl.'s Pre–Trial Submissions, Ex. B, June 28, 2000 Tr. at 38.)

At the hearing before the Bankruptcy Court on June 23, 1998, Kleck testified he did not give the Debtor specific permission to cut the timber. (June 23, 1998 Hr'g, Tr. at 138.) He also said he never agreed to

modify the terms of the mortgage with regard to the clause prohibiting timber cutting. (June 23, 1998 Hr'g, Tr. at 138.) Kleck did not testify at the later hearing in the Bankruptcy Court on November 15, 1999. At no time in the criminal trial or the first bankruptcy trial did Kleck testify that he gave the Debtor permission to cut timber. This allegation is untrue.

The second allegation is that Kleck testified at the criminal trial that he knew that the plaintiff had paid part of the proceeds of the timber cut to the Bank. This allegation is untrue. Kleck denied knowing about the Debtor's sister presenting a check stating it was from proceeds of the sale of the timber cut off the land. (Pl.'s Pre–Trial Submissions, Ex. B, June 28, 2000 Tr. at 34.) He said he did not know for a fact that timber proceeds were deposited into the loan account although he did not dispute Mrs. Worley's testimony that numerous checks were deposited into the account. (Pl.'s Pre–Trial Submissions, Ex. B, June 28, 2000 Tr. at 39.) He said he never checked to see if any timber proceeds were deposited against the loan. (Pl.'s Pre–Trial Submissions, Ex. B, June 28, 2000 Tr. at 40.) He acknowledged that assuming Mrs. Worley's testimony was correct, some of the timber proceeds were deposited against the loan. (Pl.'s Pre–Trial Submissions, Ex. B, June 28, 2000 Tr. at 40.) At the bankruptcy hearing on June 23, 1998, Kleck stated he was not aware of any specific proceeds from the sale of timber being deposited with the Bank. (June 23, 1998 Hr'g, Tr. at 146.)

The third allegation of false testimony is that Kleck testified at the bankruptcy hearing that the Bank had no knowledge that the timber was being cut while at the criminal trial he stated the Bank knew the timber was being cut. This allegation is also untrue. At the criminal trial, Kleck denied having a conversation with anyone bringing him knowledge that the timber was being cut from the 1120 acres until late summer or early fall of 1995. (Pl.'s Pre–Trial Submissions, Ex. B, June 28, 2000 Tr. at 34.) He said he had only heard through a third party of timber cutting taking place and had no direct knowledge of the occurrence. (Pl.'s Pre–Trial Submissions, Ex. B, June 28, 2000 Tr. at 34.)

At the bankruptcy hearing, Kleck stated he was not aware of a specific timber cut (June 23, 1998 Hr'g, Tr. at 137.) He said he heard through a third party that timber cutting was occurring. (June 23, 1998 Hr'g, Tr. at 139.) Obviously, at some point in time Kleck became aware of the timber cut as did others at the Bank. However, his statements at the bankruptcy hearing and the later criminal trial were always consistent.

Therefore, assuming without deciding that a non-party can be sanctioned under Rule 9011 of the Federal Rules of Bankruptcy Procedure for testifying falsely, there is no evidence that Kleck testified falsely at any time before the Bankruptcy Court.

### THE ALLEGEDLY FALSE TESTIMONY OF JOHN CROSS

The complaint for sanctions against Cross alleges that he testified at the criminal trial that the Bank had given express permission for the timber cut, that he had actual knowledge of the timber cut, and that he knew all timber cut proceeds would not be applied to the loan. The motion further alleges that Cross testified differently as to these matters in the Bankruptcy Court.

At the criminal trial, Cross testified that the Debtor did not have the permission of the Bank to cut the timber (Pl.'s Pre–Trial Submissions, Ex. A, June 28, 2000 Tr. at

45); that the Debtor had no written permission (Pl.'s Pre–Trial Submissions, Ex. A, June 28, 2000 Tr. at 46); and that the Debtor never asked for permission to cut timber. (Pl.'s Pre–Trial Submissions, Ex. A, June 28, 2000 Tr. at 52.)

Nowhere in the criminal proceeding did Cross ever acknowledge or testify that the Debtor had permission to cut the timber on the 1120 acres in question. The allegation that he did so is false.

The second allegation is that Cross admitted he had knowledge of the timber cut in his testimony at the criminal trial. This allegation is not time-specific; obviously Cross became aware at some point in time that the timber had been cut. He denied at the criminal trial learning about the timber cut in 1995; he said he probably learned about it in January 1997. At the November 15, 1999 hearing before the Bankruptcy Court, Cross testified that he could not remember the date he discovered when the timber was cut. (Nov. 15, 1999 Hr'g, Tr. at 51.) Cross was never asked at the bankruptcy hearing on November 15, 1999, if he knew the timber was being cut while the cutting was being done, and Cross did not testify at the previous Bankruptcy Court hearing on June 23, 1998 before Judge Fussell.

The third allegation is that Cross testified at the criminal trial that he knew that less than all of the proceeds from the timber cut would be applied to the loan. This allegation is completely false. The only testimony at the criminal trial on this issue was that Cross testified that it was contemplated that proceeds from the sale of the timber cut were intended to pay back part of the loan. (Pl.'s Pre–Trial Submissions, Ex. A, June 28, 2000 Tr. at 50). There were no questions asked Cross

about whether he knew that less than all of the timber proceeds were going to be applied to the note.

### CONCLUSION

The evidence presented by the Debtor does not establish any inconsistency in the testimony of Kleck or Cross at the Bankruptcy hearings and the criminal trial. What was different is that many additional facts were established at the criminal trial that were not presented at the bankruptcy hearing. For instance, neither Cross nor Kleck was ever asked at either of the bankruptcy hearings about the fact that a timber cut was contemplated by the parties from the beginning and was to be a source for the repayment of the loan. This fact was later established through testimony at the criminal trial. Establishment of this very important fact might have changed the outcome of the injunction hearing.

What is clear from the evidence presented in connection with the motion for sanctions is that there is no evidence that any testimony given by Cross and Kleck before the Bankruptcy Court was false, and that there is no inconsistency in the testimony they gave at the criminal trial. Most of the alleged testimony the Debtor characterized as inconsistent was not given at all. Therefore, the motion for sanctions under Rules 9011 and 7054 of the Federal Rules of Bankruptcy Procedure is denied.[1]

IT IS SO ORDERED.

---

1. The defendants had filed a motion for summary judgment, which has never been ruled

on by the Court because of scheduling problems. In view of the Court's decision on the

merits, the motion for summary judgment is overruled because it is now moot.